HENRY WINEMAN v. STEPHEN B. GRUMMOND.

*Boundaries—Surveys—Evidence—Deeds—Adverse possession.*

1. The true location of the boundary line between plaintiff and defendant was involved in this case; and the deeds under which the parties claim title are held competent evidence, on the part of the plaintiff, to show the location of said line, and those executed to the plaintiff to show his claim of title.

2. Allowing a surveyor, who is called as a witness in a case involving the location of a boundary line, to state his knowledge of its true location as derived from his survey of the same, which he found to correspond with certain specified maps and plats not offered in evidence, is held not to have been error.

3. Certain special findings of the jury are held to have been in accordance with their general verdict.

4. Where after a plaintiff in ejectment has made out his case by his deeds, proof of his possession under them, and of his forcible ouster by the defendant, the defendant, while disputing that the true boundary line between the parties is as claimed by the plaintiff, grounds a claim to the adverse possession of the disputed land upon the location of a certain fence as claimed by him, the plaintiff may show the actual location of the fence in rebuttal.

Error to Wayne. (Brevoort, J.) Argued January 6, 1892. Decided February 12, 1892.

Ejectment. Defendant brings error. Affirmed. The facts are stated in the opinion.

*John J. Speed,* for appellant, contended:

1. A deed is no evidence of title in the grantor, where he is not otherwise connected with the title, or shown to have ever had possession; citing *Smith v. Lawrence,* 12 Mich 431; *Bank v. Bronson,* 14 Id. 361.

2. The defendant was clearly entitled to a charge as requested, that the jury must disregard the evidence of the witness Campau. In the absence of the production of *data* established by

testimony in the cause, his evidence became only an opinion, which was inadmissible; citing *Stewart v. Carleton,* 31 Mich. 270; *Cronin v. Gore,* 38 Id. 381; *Gregory v. Knight,* 50 Id. 61; *O'Brien v. Cavanaugh,* 61 Id. 368; and the maps were not admissible in evidence in a matter of private interest; citing 1 Phil. Ev. 236, 282; 1 Greenl. Ev. §§ 139, 145, and notes to 14th ed.

*Griffin, Warner & Hunt,* for plaintiff.

LONG, J. This is an action of ejectment, brought in the Wayne circuit court, where plaintiff had verdict and judgment. Defendant brings error.

The premises recovered are situate in the city of Detroit, and are described in the declaration as follows:

"Commencing at a point on the south line of 'Andre or Clark Claim,' so called, situate on the south side of Larned street, between Randolph and Brush streets, in said city of Detroit, thirteen and thirty-one one-hundredths (13.31) feet easterly from a point where the rear continuous line of the 'Hotel Benedict,' so called, intersects said south line of said Andre or Clark claim; thence running easterly on said south line of said Andre. or Clark claim thirty-six and 78-100 feet; thence southerly three and 64-100 feet, to lands of said Henry Wineman; thence westerly, on a line parallel with said south line of said Andre or Clark claim, thirty-six and 78-100 feet; thence northerly to the place of beginning; and said strip of land being a strip thirty-six and 78-100 feet in length by three and sixty-four hundredths (3.64) feet in breadth, lying southerly and along the said south line of said Andre or Clark claim, and easterly of a point thirteen and 31-100 feet east of the rear line of the 'Hotel Benedict Property,' so called; and which said south line of said Andre or Clark claim is as follows: Commencing at a point on the easterly line of Randolph street, forty-nine and 74-100 feet southerly from the corner of Larned and Randolph streets; thence north, sixty degrees east, forty-nine and eighty one-hundredths (49.80) feet, to the westerly line of the Brush farm; thence north, sixty-four. degrees east, ninety and 20-100 feet."

The Andre or Clark claim comprises a piece of land upon the Brush farm, south of Larned street and east of

Randolph street; and its southerly line commences at a point on the westerly line of the Brush farm 49.74 feet south of the south line of Larned street, and then continues in a straight line on the course of north, 64 degrees east, 192.24 feet. Lying westerly of the Andre or Clark lot, fronting on Randolph street, is a piece of land occupied in connection with the Andre or Clark lot as one parcel, and which is known as "Lot 75, section one, of the Governor and Judges' plan." The southerly line of said lot 75 is on the course of north, 60 degrees east, to the line of the Brush farm, and the southerly line of the Andre or Clark lot from the line of the Brush farm diverges to a course of north, 64 degrees east, to the rear line of the Andre or Clark lot. The "Bellanger Lot," so called, lies southerly of and contiguous to the Andre or Clark lot. This southerly line of the Andre or Clark lot is the northerly line of the Bellanger lot.

The plaintiff, upon the trial, as a part of his case, put in evidence three deeds from one William Moore to him,—one dated March 29, 1851, one dated September 26, 1860, and one dated May 17, 1865. The first of these three deeds conveyed a piece of land 100 feet in depth, easterly from Randolph street; the second conveyed a piece 20 feet in depth, in the rear of the first-described piece; and the third an additional 20 feet,—making a total depth acquired by plaintiff of 140 feet easterly from Randolph street. The northerly boundary of these pieces of land is the southerly line of the Andre or Clark lot. The plaintiff also put in evidence three deeds to the defendant conveying lands the southerly boundary of which is the southerly line of the Andre or Clark lot. One of these deeds to the defendant was made by Clement Lafferty, dated September 23, 1886; one by Julian Ord, dated June 23, 1887; and the other, given in January, 1890, by the Calnon heirs. In the first of these deeds the prem-

ises are described as being a part of the Andre or Clark lot, and cover the piece of land on the south-east corner of Larned and Randolph streets, having a frontage of 49.75 feet on the easterly side of Randolph street, and 90 feet, more or less, on the southerly side of Larned street. The deed from Ord to the defendant conveyed 23½ feet in the rear of the last-described piece, and which is bounded by the southerly line of the Andre or Clark lot. The Calnon deed describes the piece of property 28½ feet in width on Larned street, the southerly line of which is the southerly line of the Andre or Clark lot. These three deeds conveyed lands extending 142 feet in depth from Randolph street, the southerly line of which is the Andre or Clark lot. It appears from these several conveyances that the northerly line of the Bellanger lot, which is the southerly line of the Andre or Clark lot, is the true dividing line between the premises owned by the respective parties.

The plaintiff, to locate this dividing line upon the ground, called Thomas Campau as a witness, who testified that he was a surveyor and civil engineer of more or less experience since 1849; that he was familiar with all the property described in these several deeds. He described the Bellanger lot as an old private claim, part of the Brush farm, an acre, or French arpent, in length. He testified that the starting point between the two lots is on the west line of the Andre or Clark lot, facing Randolph street, at a point 49.74 feet, on the course of 26 degrees west, from the south line of Larned street, and that the line then takes a course of north, 64 degrees east; that the farm lying west is part of the Governor and Judges' plat, lot 75; that there is no deviation in the line between the two claims from the course of north, 64 degrees east; that it is a straight line, running 192.24 feet; and that the southerly line of the

Andre or Clark lot is at right angles with the west line of the Brush farm.

The first controversy which arose in the case was whether the land described in the declaration is on the north or south side of the true line between the Andre or Clark lot and the Bellanger lot. If it be on the north side of that line, there can be no question but that the defendant was entitled to the verdict. If upon the other side of that line, the question is presented whether the defendant had been in possession a sufficient length of time, and under such claim, as to hold it by adverse possession. The situation and surroundings of the premises are shown by the map on following page.

The strip lying north of the heavy line, and between that and the claimed south line of the Andre or Clark lot, is the one in controversy. If the situation be as shown by this map, and Mr. Campau, the surveyor, had any facts upon which to base his testimony that the south line of the Andre or Clark lot is a continuous or straight line east from the west line of the Brush farm, then it is apparent that the strip of land in controversy is south of the south line of the Andre or ·Clark lot, and consequently forms a part of the Bellanger lot, and is included in the deeds of conveyance to the plaintiff from Mr. Moore.

Two of the principal objections of defendant's counsel may be here stated:

1. That the court was in error in permitting the plaintiff to introduce the deeds in evidence.

2. That the testimony of Mr. Campau was incompetent, as it was based upon certain maps and plats, which were not shown to be correct, or to correspond with the lines upon the ground.

It was not error to admit the deeds in evidence. The deeds to the plaintiff were competent for the purpose of

showing the conveyance to him, and its situation, upon the Bellanger lot, and the north line of which is the south line of the Andre or Clark lot. These deeds were also competent evidence for the purpose of showing claim of title by the plaintiff.

One Lewis C. Brossy was called as a witness, and testified that he had occupied the premises as a tenant under plaintiff since December, 1861. At the time of his going

into possession there was a building facing Randolph street, extending 80 feet back, the north side of which stood upon the line between these lots. There was also a 12x18 one-story brick building in the rear of this. This was afterwards torn down, and a three-story brick building erected by Brossy in 1866. This building stood there until the spring before the trial of this case, when it was torn down, to build a new addition in the rear of the building facing Randolph street. The property in question is directly in the rear of this addition, and plaintiff claims that the north line of this brick building, extended easterly, would include the property in controversy within the Bellanger lot. This strip in controversy has never been built upon, except as will be hereafter mentioned. Mr. Brossy not only occupied the building as a tenant under plaintiff during these years, but claims that he used the strip in controversy here with a large kettle for dyeing purposes. He also testified to a fence which extended from the three-story building to a barn in the rear, and that the fence extended in a straight line from the north-east corner of this building eastward, except as there was a water-closet standing upon the south side of this line, setting back over the premise in controversy about one-half to two-thirds of its width; that the fence extended from the corner of the building to the closet, and from the opposite side of the closet to the barn, and that this fence stood there until within the last five or six years, and a part of it remained until about two years ago.

There was no error in admitting in evidence the deeds running to the defendant. These were competent evidence to show not only the line between the Bellanger and the Andre or Clark lots, but also for the purpose of showing that whatever property the defendant claimed title to was situate upon the Andre or Clark lot.

The defendant contended that there is a jog in the line between the Bellanger lot and the Andre or Clark lot, commencing some thirteen feet east of the north-east corner of the Brossy building, three or four feet to the south, and that the line then continues eastward to Moore's barn, and for that reason the strip in controversy belongs to the Andre or Clark lot. This jog is indicated upon the plat heretofore set out. Upon this contention, some time before this suit was commenced, the defendant took possession of the strip, and erected a fence with a line of posts with chains along the south side of the strip, and excluded the plaintiff, who then claimed to be in possession of it, from his possession. At the time defendant took possession, a part of the old fence upon the north side of the strip was yet visible.

The contention that Mr. Campau's testimony was incompetent cannot be sustained. The maps and plats referred to by Mr. Campau were not offered nor received in evidence. The witness had a right to state his knowledge of the line between these two lots, and how such knowledge was derived. He testified that he had surveyed this very line some time in the 50's, and he found it to correspond with the maps, and the maps to correspond with it. The maps referred to were Farmer's map of 1835, and Hathan's map of 1856. The testimony of Mr. Campau was offered for the purpose of fixing the boundaries of the Bellanger and the Andre or Clark lots, and the true dividing line between them. In *Stewart v. Carleton*, 31 Mich. 273, referring to the office of surveyor, it was said by this Court:

"The law recognizes them as useful assistants in doing the mechanical work of measurement and calculation, and it also allows such credit to their judgment as belongs to any experience which may give it value in cases where better means of information do not exist. But the deter-

mination of facts belongs exclusively to courts and juries."

The testimony of Mr. Campau had a tendency to show that the buildings upon the Bellanger lot stood upon the line of the Andre or Clark lot, and that that line thence eastward was a continuous one, and did not jog, as claimed by defendant. For this purpose his testimony was competent, and he had a right to call to his aid the maps and plats which he had found correct in the 50's. It is held in some cases that boundaries may in fact be proved by hearsay evidence. *Boardman v. Reed*, 6 Pet. 341; *Conn v. Penn*, Pet. C. C. 496; *Cherry v. Boyd*, Litt. Sel. Cas. 7. The plaintiff claimed that from the deeds and Mr. Campau's testimony he had established the dividing line between the Bellanger and the Andre or Clark lots. He did not introduce the deeds for the purpose of tracing his title from the government, but to show a claim of title, and possession under such claim, from 1861 to the time he was ousted by the defendant. The testimony had this tendency.

Counsel for the defendant requested the court to charge the jury that they must wholly disregard the testimony of Mr. Campau as to his survey of the line between the plaintiff's and the defendant's property, there being no evidence in the case that the maps from which Mr. Campau obtained the *data* from which he made his surveys are authentic, and set forth the true boundary line. This request was refused, and the court charged that, if the jury found that the parcel claimed by plaintiff lies south of the line of the Andre or Clark lot, and within the boundaries of the plaintiff's property, as defined by his deeds, then the plaintiff was entitled to recover, unless the defendant had acquired the premises by adverse possession. There was no error in this charge.

It was contended further on the part of the defendant that he and his grantors had been in actual possession of the strip in controversy for more than 15 years prior to the commencement of suit. This question was submitted to the jury under a very full and fair charge from the court, and found adversely to the defendant.

The defendant submitted two special questions to the jury, as follows:

"1. Did the old board fence serve as a boundary between the plaintiff's and the defendant's property for a period of more than 15 years?

"2. Was the old board fence on the same line where the iron fence now stands?"

To the first question the jury answered in the affirmative, and to the other in the negative; that is, the jury found that the old board fence claimed to be on the true line by plaintiff, and testified to by Mr. Brossy, stood there for more than 15 years. This old board fence did not show the jog in the line, and was in accordance with the plaintiff's claim. The iron fence, as the jury found, did not stand on that line, and is the line showing the jog as indicated on the map. These two questions were therefore solved by the jury in accordance with the plaintiff's claim, and show that the defendant never had possession of that strip until he ousted the plaintiff, and put the iron fence up. These findings were therefore in accordance with the general verdict.

One other question is raised. The plaintiff was permitted to put in further testimony after the defendant rested, showing his continuous possession for more than 15 years. It is claimed by the defendant that this was an abuse of discretion. We think not, under the facts appearing in the record. The plaintiff had made out his case originally by his deeds, and his possession under

them, and that he had been ousted by force by the defendant. The defendant, while disputing that the true boundary was where plaintiff claimed, also contended that this old fence stood on a line within a few inches of the north wall of a shed erected by Mr. Brossy for more than 15 years, and his claim of adverse possession was grounded upon this fact. The plaintiff had a right, in view of this claim, to show where the old fence actually stood, and the testimony on rebuttal was offered for this purpose. It was proper rebutting evidence.

We find no error in the record, and the judgment must be affirmed, with costs.

MORSE, C. J., GRANT and MONTGOMERY, JJ., concurred. McGRATH, J., did not sit.