## Timothy W. Robinson *versus* James White.

Evidence tending to show that a certain "stake" is the monument referred to in a deed, is proper for the consideration of the jury; but from the facts thus proved, and in the absence of all proof to the contrary, the Court would not be authorized to instruct the jury that there was any presumption of law that it was such monument.

In an action of trespass, *quare clausum*, the burden of proof is upon the plaintiff to show affirmatively the location of the monuments named in the deed under which he claims, and that they include the place entered upon by the defendant.

A party has no cause of exception to an instruction given to a jury by the presiding Judge at his own request.

Nor can a party justly except to instructions as favorable to him as the law will justify, though erroneous in other respects.

A grant of land described in the deed as extending to a monument standing on the bank or margin of a river, goes to the thread of the river, unless its terms clearly denote an intention to stop at the margin.

*It seems* that land bounded on a natural lake or pond, extends only to the water's edge; otherwise, if the pond is artificial.

A deed described the boundary of certain land as running "to the pond to a stake and stones:" — *Held*, that this restricted the grantee to the "stake and stones," if they, or their original location could be ascertained; if not, then his grant extended "to the pond."

Natural monuments must control both courses and distances.

ON EXCEPTIONS from *Nisi Prius*, MAY, J., presiding.

This was an action of trespass *quare clausum.*

Plaintiff introduced a warranty deed from Benjamin Joy to Stephen Robinson, dated June 27th, 1823, duly acknowledged and recorded.

The description only is material, and was as follows: "A certain parcel of land in Belmont, (now Morrill,) being lot No. 80, according to survey and plan of Noah Prescott, made for Benjamin Joy in 1822 and 1823, and bounded as follows, viz.: Beginning at the southwest corner of Jacob Dolliff's lot at a beach tree; thence south 84 degrees east 156 rods to the pond to a stake and stones; thence southerly on said pond about 80 rods to a stake and stones at the southeast corner of said lot; thence south 80 degrees west 82 rods to the road; thence north 20 degrees west on said road 32 rods to a stake and stones; thence south 80 degrees west 80 rods to a beach tree; thence north 10 degrees east on the west line of lot, 88 rods, to the place of beginning; containing seventy-five acres, more or less, as surveyed by said Prescott."

Mr. Miller, the surveyor appointed by the Court, prepared the plan which bears his signature.

It was admitted that plaintiff had this title. The following plan of Prescott was introduced by plaintiff. The dotted lines are added: —

Robinson *v.* White.

Robinson *v.* White.

Plan of the Robinson Lot in the
Town of Belmont.
By J. MILLER, Surveyor,
*Appointed by the Court.*

Plaintiff introduced evidence that defendant entered upon the bog lying within the side lines of said lot 80, (if they are to be extended across the bog as represented in said Miller's survey,) at the time alleged in the writ, and picked cranberries, which was the trespass complained of; nominal damages only were claimed.

Defendant, to show his title to the bog and cranberry patch, introduced deed from Wm. D. Sohier, to himself, dated May 10, 1854, duly acknowledged and recorded, conveying many parcels of land in said Belmont, (now Morrill,) and

among other clauses in the description is the following, which is all that is material in the case: "Also that part or the whole, as the case may be, of the "Cross pond," and bog, meadow and upland adjoining thereof, which is not by express terms, or by implication of law, included in any conveyance or conveyances made by the late Benj. Joy, or any parties interested in his estate, of lots abutting thereat, and to which no other party or parties have any right or title."

It is admitted that the place where the cranberries grew, either passed to Robinson and to plaintiff, under Joy's deed of June 27, 1823, or to defendant, under his deed above recited.

There was evidence from both sides that there was at the margin of the bog and upland, in various places, a natural embankment, which the witnesses called a "sea wall," but which was disconnected and not continuous, but these were merely vacant places where there was no such wall; and at one place there was below this wall or bank a strip of land like intervale extending into the bog, and upon which large trees were still growing; and that for fifty years there had been small growth upon the bog itself and still is.

The defendant introduced evidence tending to prove that thirty years ago the water came up near to the foot of the "sea wall," in the rainy parts of the year, and that the ice in the winter did the same; witnesses stated it to be for seven or eight months in the year, and making up near to the margin of the bog and upland, where the side lines of the lot intersected said margin: — also, that a stake and stones with surveyor's marks upon the stake, had stood about six or eight rods above the sea wall, on the line from the starting point in said deed to Robinson, (which starting point was undisputed by the parties,) near the end of the one hundred and fifty-six rods, which was seen by witness eight or ten years ago; that said stake appeared like a stake of some years standing when seen ten years ago; there was no other proof regarding said stake; and that there had been another stake corresponding, to wit, standing on the other side line at the margin of the

bog and upland, but witness did not remember any marks upon it. Miller, the surveyor, testified, that the stake at the end of the one hundred and fifty-six rods, was a few rods further from the starting point than one hundred and fifty-six rods, but not further than he had found to be the usual overplus in re-measuring Prescott's lines. There was also testimony that this last stake did not stand in the side line of the lot. This was all the evidence tending to show that either were corner stakes.

Several witnesses who had lived near, stated that they never knew of either of the stakes. There was also testimony that a few years ago a dam was built below on the stream a quarter of a mile, that raised the water from one to four feet in the pond, which was maintained part of the year; also, that the bog had made into the pond within thirty years some two or three rods.

Defendant's counsel requested the Court to instruct the jury:—

*First,* That if they found that there was an old stake standing at the end of the one hundred and fifty-six rods, the distance named in the deed, bearing upon it surveyor's marks, and other indications of the character of the monument named in the deed, in the absence of all proof to the contrary, the presumption would be that it was the stake referred to in the deed.

*Second,* The burthen of proof to show that this was not the stake named in the deed, was upon the party alleging such to be the fact.

*Third,* That the stake is the *particular* monument, and that the phrase "at the pond," "or to the pond," is only *indicea* of the place where the stake stood; and if a stake is proved to have existed at the place where the pond was at the time of the deed, even if it only reached that point at the time of freshets, under no legal hypothesis could they go beyond the stakes named in the deed.

*Fourth,* That if the pond cannot be reached at all, except by abandoning the line named in the deed, then they are controlled by courses and distances.

The Court declined to give the first instruction, and the second, in the terms requested, but instructed the jury, "that plaintiff must make out affirmatively, the burthen of proof being upon him, where the monument named in the deed stood, and that the monument, referred to in the deed, included the place which defendant entered upon."

The third requested instruction was given; and the Judge further instructed them, "that the pond and stake were the monuments named in the deed, that they were identical, and that if they could find them to coincide on the face of the earth, then they would be the true monuments; but if the stake could not be found, then the pond was to be taken as the most certain." But if they should find that a stake was erected by the parties when the deed was made, or immediately thereafter, at the margin of the pond as it then was, and that at the time it was so erected, the pond was enlarged from any cause beyond its natural margin, then such stake or the place where it stood would be the true monument or boundary. Other appropriate instructions were given and not excepted to.

And to the *fourth* request, the jury were instructed that if a slight variation of the course named in the deed from the monument begun at, would reach the pond named in the deed, then the line must be extended to the pond, although in its natural state the distance was greater than that given in the deed, unless they should find the pond was enlarged and a stake inserted as aforesaid.

The verdict was for the plaintiff.

To the foregoing rulings the defendant excepted.

*N. Abbot,* for plaintiff, cited *Nelson* v. *Butterfield,* 21 Maine, 220.

*White & Palmer,* for defendant, cited *Bradley* v. *Rice,* 13 Maine, 198, and cases there cited; Angell on Water Courses, p. 37, § 41; *State* v. *Gilmanton,* 9 N. H., 461; *Waterman* v. *Johnson,* 13 Pick. 261; 1 Fairfield, 238.

APPLETON, J.— This is an action of trespass *quare clausum.* The plaintiff claims a parcel of land in the town of Morrill, the boundaries of which are described in his deed as follows: "Beginning at the southwest corner of Jacob Dolliff's lot, at a beech tree; thence south eighty-four degrees east one hundred and fifty-six rods *to the pond to a stake and stones;* thence southerly *on said pond* about eighty rods to a stake and stones, &c., &c., containing seventy-five acres more or less, as surveyed by said Prescott."

As no motion for a new trial as against evidence, appears to have been made, the only questions arise on exceptions to the rulings, or the refusals to rule, of the presiding Judge.

The controversy between the parties is, as to certain bog land lying between where the "stakes and stones" are alleged to have been placed, and the water line of the pond. The stakes and stones are not shown as now standing, but evidence was introduced tending to show their original location to have been at some distance from the pond as it now is.

1. The first requested instruction was, that "if they found that there was an old stake standing at the end of the one hundred and fifty-six rods, the distance named in the deed, bearing upon it surveyor's marks, and *other indications* of the character of the monument named in the deed, in the absence of all proof to the contrary, the presumption would be that it was the stake referred to in the deed." This was refused. What the "other indications of the character of the monument" were, do not appear to have been stated in the request. But there was no presumption of law in the case. The various facts bearing upon the stake, tending to show the same to be the monument, were proper for the consideration of the jury; but the Court could not, as requested, have given the instruction that there was any presumption of law binding on them. The evidence was entirely for the consideration of the jury.

2. The instruction given, so far as applicable to the second request, is unobjectionable.

Robinson v. White.

3. The third request was, that "the stake is the particular monument, and that the phrase "at the pond," or "to the pond," are only *indicia* of the place where the stake stood; and if a stake is proved to have existed at the place where the pond was at the time of the deed, even if it only reached that point at the time of the freshet, under no legal hypothesis would go beyond the stakes," which was given. It is not necessary to determine the accuracy of this instruction, for as it was given in compliance with the request of the defendant, he can have no cause of complaint.

But to this instruction, the further qualifications were added, "that the pond and stake were the monuments named in the deed, that they were identical, and that if they could find them to coincide on the face of the earth, then they would be the true monuments; but if the stake could not be found, then the pond was to be taken as the most certain. But if they should find that a stake was erected by the parties when the deed was made, or immediately thereafter, at the margin of the pond as *it then was*, and that, at the time it was so erected, the pond was enlarged from any cause beyond its natural margin, then such stake, or the place where it stood, would be the true monument or boundary."

It has been held, when land adjoining a river, is described as bounded by a monument standing on the bank of the same, and a course is given as running from it down the river, as it turns to another monument, the grantee takes to the middle of the river. *Luce* v. *Carley*, 24 Wend. 451. So when land is bounded by a line commencing at a stake "by the side of the river or mill-pond," and running by the side of said pond to another stake by the said pond, the grant extends to the thread of the river. *Lowell* v. *Robinson*, 4 Shep. 357. "It is conceded," remarks COWEN, J., in *Starr* v. *Child*, 20 Wend. 149, "that the words *to and along the river* would include the stream. What difference between them and to and along the shore? A difference in words signifying the same. In either case, taken literally or according to common understanding, they carry you to a line immediate the water

and the land, and touching both." If a boundary is described as running to a monument standing on the bank, and from thence running "by the river," or "along the river," it does not restrict the grant to the bank of the stream; for the monument, in such case, is only referred to as giving the directions of the line to the river, and not as restricting the boundary *on the river*. *Child* v. *Starr*, 4 Hill, 369. Although the monuments are described as standing on the margin or bank of the stream, the grant carries the title of the grantee to the centre of the river, unless its terms clearly denote an intention to stop at the margin. *Cold Iron Spring Works* v. *Tolland*, 9 Cush. 495; *Inhab. of Ipswich, pet'rs*, 13 Pick. 431.

Where land is bounded upon a lake or pond, if it is in its natural state, it would seem that the grant extended only to the water's edge. *State* v. *Gilmanton*, 9 N. H., 461. Where the pond is an artificial one, "it would be natural to presume," remarks SHAW, C. J., in *Waterman* v. *Johnson*, 13 Pick. 261, "that a grant of land bounding upon such a pond, would extend to the thread of the stream upon which it is raised, unless the pond had been so long kept up as to become permanent, and to have acquired another well defined boundary."

Now the qualifications of the third requested instruction, cannot be regarded as unfavorable, in any degree, to the defendant. They restrict the plaintiff to the stake and stones, if they can be found, or if their original location can be ascertained, but if neither can be, then "to the pond." To these, defendant cannot justly except.

4. The fourth requested instruction was properly refused, for nothing is better established than that natural monuments must control both course and distance. The instruction given, in lieu of the one requested, is not one of which the defendant can complain. It required the line to be run to the pond, "unless they should find the pond was enlarged, and a stake erected as aforesaid." In all the instructions, the precedence was given to the artificial over the natural boundary.

It is not necessary to determine whether, if the verdict had been for the defendant, the exceptions might not have been

sustained; but it is very certain that he has no just ground of complaint. *Exceptions overruled.*

TENNEY, C. J., and HATHAWAY and MAY, J. J., concurred.

GOODENOW, J., gave the following dissenting opinion : —

This is an action of trespass *quare clausum.* The verdict was for the plaintiff. The case comes before us upon exceptions. It is admitted, that if the plaintiff has no title, the defendant has a title to the *locus in quo.*

The plaintiff claims under a warranty deed from Benj. Joy to Stephen Robinson, dated June 27, 1823.

The description of the premises conveyed, is as follows : "A certain parcel of land in Belmont, being lot No. 80, according to survey and plan of Noah Prescott, made for Benjamin Joy in 1822 and 1823, and bounded as follows, viz : Beginning at the southwest corner of Jacob Dolliff's lot, at a birch tree; thence south eighty-four degrees east one hundred and fifty-six rods *to the pond to a stake and stones;* thence southerly *on said pond* about eighty rods to a stake and stones at the southeast corner of said lot; thence south eighty degrees west eighty-two rods to the road; thence north twenty degrees west on said road thirty-two rods to a stake and stones; thence south eighty degrees west eighty rods to a beech tree; thence north ten degrees east on the west line of lot eighty-eight rods to the place of beginning; containing seventy-five acres, more or less, *as surveyed by said Prescott.*"

The probability is, that all that part of the premises which occasions the present controversy, was formerly a part of the pond, as so denominated in common parlance. It might have been considered worthless.

The stake and stones named as the second monument in Joy's deed, cannot be found. The course and distance from the *birch tree,* at the beginning, indicate the point where that second monument stood; and it was, unquestionably, on the margin of the bog or low land, or *pond,* as it was probably called when the water was high. It cannot be reasonably supposed that Prescott made a mistake of ninety-six rods in

the admeasurement of that line, or that the grantor intended, or that the grantee expected, that it was to be thus extended by implication. There is great precision' in the description, which seems to silence implication. The black lines on Prescott's survey, reach to the low lands or bog, and no further. The second course of said deed runs southerly *on said pond* about eighty rods to a stake and stones. The first course extended ninety-six rods beyond the one hundred and fifty-six rods named in the deed, would not touch the present pond. The second course from the point claimed by the plaintiff could not, therefore, run the first ten rods on what the plaintiff claims to be the pond intended. If it aims for the high land southerly and directly, it will not touch the plaintiff's pond; if otherwise, it will run only ten rods to the pond, and then much less than *eighty rods on the pond,* before it hits the other extended dotted line. This position conflicts with other parts of the deed continually. The plaintiff's title does not cover the *locus in quo,* in my opinion. It is limited to the margin of the bog or low land, about one hundred and fifty-six rods from the beginning, or birch tree. It is a question of fact for the jury, from all the evidence in the case, the deed, the plans, the state of the water, &c., &c., to find the place where the first line terminated.

The instructions of the presiding Justice were therefore erroneous, and led the jury to a wrong conclusion, or did not permit them to reach a right conclusion, or to give due effect to all the evidence.