## Margaret Case v. Jesse Trapp.

*Boundaries—Re-surveys.*

Where the line between quarter sections of land has gone unquestioned for a long time,—as in this case 23 years—it ought not to be disturbed upon a mere disagreement between surveys, especially if the later survey is made under circumstances unfavorable to accuracy, such as the absence of corner posts and witness trees and the existence of a boundary dispute.

Highway commissioners had a highway laid out in 1856 upon the line between adjoining parcels of land lying in different quarter sections, having first had the line surveyed for the purpose.    In 1879 the county surveyor re-surveyed the line on an *ex parte* application, and one of the adjoining owners acted as a chainman, while the other, so far as appeared, did not know of the re-survey.    The quarter posts and bearing trees were gone, and the surveyor found that the boundary should be moved several rods upon the land of the adverse owner.    *Held*, that in view of the length of time the line had gone unquestioned, the *ex parte* nature of the survey, and the absence of monuments which were probably there when the first survey was made, the first survey was probably correct, and the line ought not to be changed.

Appeal from Gratiot.    Submitted June 22.    Decided June 27.

BILL to clear title.    Dismissed below.    Complainant.
appeals.    Reversed, and relief granted.

*C. J. Willett* for complainant.    A boundary line long
acquiesced in as the true line ought not to be disturbed on
new surveys:   1 Whart. Ev. 409; *Smith v. Hamilton* 20
Mich. 438; *Joyce v. Williams* 26 Mich. 332.

*James L. Clark* for defendant.    Acquiescence by adja-
cent owners in the line on which the fence should run
between them does not prevent either party from testing its
correctness:   *Chapman v. Crooks* 41 Mich. 598.

COOLEY, J.   Complainant is owner of the southeast quar-
ter of the northeast quarter of section six in township eleven
north of range four west in Gratiot county, with some
exceptions not important to this controversy.   Defendant is
owner of the parcel lying immediately south of this.   In the
year 1856 the highway commissioners of the township laid
out a highway on what they supposed was the line between
the two parcels, having first had a survey made for the pur-
pose.   The country was then but little settled, and com-
plainant's land had been purchased of the Government only
two years before.   For more than twenty years the dividing
line between the two parcels was supposed to be the center
of this highway, and complainant and those through whom
she derived title exercised dominion over the land up to the
highway without disturbance or controversy.

In 1879 the county surveyor was brought upon the ground
to survey out the line.   The account he gives of his action
is as follows:

" I surveyed it in May,—on the 13th, 14th and 29th days
of that month,—1879, at the request of a majority of the
resident land-owners of said section.   The chainmen were
Jesse Trapp and A. Edmondson; they were sworn.   I think
the east and west quarter line of said section ran some six
or seven rods north of the line of an old east and west road,
the east quarter post was set some six or seven years ago,
when I surveyed section five of same township; the old
bearing trees were all gone, and I surveyed and measured

the section line between sections five and six, and set the post at proportional distances, according to law with reference to setting quarter posts where they are lost. The north and west lines of section six are the township lines, and the north and west subdivisions are fractional. On the west side of a township in the government survey they never set a quarter post, so I surveyed the west side of section six in order to ascertain where to set the quarter post; I set it at proportional distances, using the same method that I did on the east side. In the government survey between section six and section one of the town west adjoining said section six, there is a jog of one chain and sixty-three links at the section corner, as shown by the plat."

The cross-examination elicited the fact that the surveyor took the word of the parties employing him that the survey was at the request of a majority of the parties interested, and that in fact the survey was *ex parte* and with only one set of claimants represented.

This survey gave to the defendant a strip of land north of the highway, some six or seven rods in width, and he immediately claimed title and asserted a right to possession. Complainant then filed this bill to quiet her own title.

It is assumed on the part of the defence that the survey corrects an old error, and unquestionably locates the true line. We do not think there is any certainty of this. On the contrary the probabilities are all against it. If the government surveys had all been accurate and in accordance with the rules laid down for the guidance of the surveyor, there would commonly be no difficulty in locating the government subdivisions with reasonable certainty, even after the monuments had disappeared. But it is notorious that the errors in the original surveys were frequent and sometimes considerable, and they were often such as to make irregular lots and lots of different sizes in the same neighborhood, where according to the field notes and the plats they should be alike. The consequent difficulty in locating boundaries after corner posts and witness trees are gone is appreciated by every intelligent surveyor.

We have no doubt the county surveyor who made the survey of 1879 was intelligent and had the purpose to be

accurate. But we have no reason to suppose the one who made the survey of 1856 was not equally trustworthy, and the circumstances were altogether more favorable to a correct result at that time than when the last survey was made. The land was then but recently located; it is highly probable that corner posts and witness trees remained; if they were gone, there might be disinterested persons in the neighborhood who had seen them and could assist in determining their location, and there was then no existing dispute and litigation to interest parties in leading the surveyor astray. In 1879, on the other hand, the witness trees were gone, and the survey was made at the instance and with the assistance of one party in interest, and without the knowledge, so far as appears, of the other. When under such circumstances the two surveys are found to disagree, there should be no hesitation in saying that the probabilities favor the earlier one, especially when it has remained unquestioned for many years.

It is not very clear that complainant failed to make out a good title by adverse possession, and it is certain, we think, that she brought her case within the decisions in *Stewart v. Carleton* 31 Mich. 270; *Diehl v. Zanger* 39 Mich. 601; and *Dupont v. Starring* 42 Mich. 492. But we prefer to ground our judgment upon the probability that the survey of 1856 was correct. Lines so long unquestioned ought not to be disturbed upon a mere disagreement between surveyors, especially when the last survey is made under the unfavorable circumstances which are disclosed by this record.

The complainant is entitled to the relief prayed, with costs of both courts.

The other Justices concurred.