Beaty *v.* Robertson *et al.*

Filed March 18, 1892.

---

## No. 15,557.

## BEATY *v.* ROBERTSON ET AL.

BOUNDARIES.— *Variance Between Plat and Field-Notes.— Which Controls.—* If there is any difference between the plat and field-notes of the original government survey, the former must control, for it represents the lines and corners as fixed by the surveyor general, and by which the land was sold.

From the Jackson Circuit Court.

*W. K. Marshall,* for appellant.

*B. H. Burrell, R. Applewhite* and *J. F. Applewhite,* for appellees.

MILLER, J.—The appellant brought this suit to recover a tract of land six chains and seventy-five links in width, and extending from the Indiana boundary line south to the south line of section six, in township six north, of range five east.

If the strip of land in controversy is in the southeast quarter of the section, it belongs to the appellant; if in the southwest quarter, it belongs to the appellees.

The dispute as to the location of the line dividing the section grows out of the manner in which the original government survey was made by the deputy surveyor, long prior to the entry of either of these tracts of land.

This section is fractional, and contains an amount of land in excess of the required number of acres necessary for a section.

Under these circumstances, the act of Congress regulating the mode of making such survey (Act of May 10th, 1800; 2 U. S. Statutes at Large, 79, section 3), provides as follows:

"And in all cases where the exterior lines of the townships thus to be subdivided into sections or half sections, shall exceed or shall not extend six miles, the excess or deficiency shall be specially noted, and added to or deducted from the western and northern ranges of sections or half sections in such township, according as the error may be in running the lines from east to west, or from south to north; the sections and half sections bounded on the northern and western lines of such township shall be sold as containing only the quantity expressed in the returns and plats respectively, and all others as containing the complete legal quantity."

The original survey, after running and establishing the township lines, should have begun in the southeast corner of the township, and thence, working northward and westward, laying off full sections, by necessity putting any excess, or deficiency, in the quantity of land in the northern and western tiers of sections.

We may infer that this method of dividing the township into sections was pursued.

The same rule should have been pursued in the subdivision of the sections on the northern and western tiers of sections in their subdivision into quarter sections; for by no other method could the excess or deficiency of land be thrown where the act of Congress required—that is, on the northern and western exterior of subdivisions of the section.

Exemplifications of the field notes of the original survey, and of the plat of the section, were given in evidence by both parties to the suit, from which it appears that the deputy surveyor, in running the south line of this section, commenced at the southwest corner of the section, and ran east 40 chains, where he set a quarter-section post, and thence east to the southeast corner. In running the north line, he ran from the northeast corner west 40 chains, where he set a post, and thence to the northwest corner of the section.

The effect of this method of setting off the section was to throw the excess of land in the south half of the section, on the eastern and interior subdivision of the section, and in the north half, on the western or exterior subdivision.

The copy of the field-notes, certified to by the acting commissioner of the general land office, gives the field-notes of the south line as follows:

| | |
|---|---|
| East. | Between Sec's 6 & 7, T. 6 N., R. 5 E. |
| 17.00. | A brook 50 lks. wide, course S. W. |
| 40. | Set qr. Sec. post [ bearing omitted]. |
| | [This post should stand at 40 chains from the cor to Sec's 5, 6, 7 & 8, & of course is wrong. S. W]. |
| 80 3. | Set a post on Indian boundary, from which |
| | A Beech 10 in diar. bears N. 19, E. 4 lks. dist.; & |
| | A do 10 " "     " S. 55, W. 66 " " |
| | Land flat & wet; timber: Beech, Oak, Ash & Walnut. |

A copy of the same instrument, certified to by the auditor of state, omits that portion which is enclosed in brackets.

The appellant claims that this portion of the field-notes is an unauthorized interpolation made by some one in the land office.

We are unable to agree with counsel in this position. We could entertain no such presumption against the integrity of the records in a department of the general government.

The discrepancy between the two certified copies of these field notes is, in part, explained by reference to the plat given in evidence by both plaintiff and defendant, which gives not only the dimension of the boundary lines, but also sets forth the location of the half section line running north and south of the Indian boundary line, and the number of acres contained in each lot or parcel of ground contained in the section.

"If there was any variance between the plat and field-books the former must have controlled, for it represented the lines and corners as fixed by the surveyor general, and by which the land was sold; and the law declares that the corners and boundaries as returned *by*, not *to*, that officer, shall be the corners and boundaries." *Doe* v. *Hildreth*, 2 Ind. 274 (280).

In *Chapman* v. *Polack*, 70 Cal. 487, it is said :

"From *data* furnished by the surveyor the plats are prepared. One of the objects of the manual and law was to simplify the mode of disposing of the public lands, so that without cumbering patents with descriptive field notes the plats of the surveys should afford all necessary information to purchasers, and at the same time afford a convenient and certain description by reference of the land conveyed; and these official plats are made the basis of all sales and selections of the public lands, and are solely referred to in the usual patents to show what lands are patented."

In *Vance* v. *Fore*, 24 Cal. 436, it was said : "The map may be regarded as a daguerreotype of the land which the grantor intended to convey."

In *Cornett* v. *Dixon*, (Ky.) 11 S. W. R. 660, a patent made in accordance with a plat and survey was held sufficient to

control the length of a line as given in the field-notes of the surveyor.

In *Cragin* v. *Powell*, 128 U. S. 691, the court said: "It is a well-settled principle that when lands are granted according to an official plat of the survey of such lands, the plat itself, with all its notes, lines, descriptions and landmarks, becomes as much a part of the grant or deed by which they are conveyed, and controls, so far as limits are concerned, as if such descriptive features were written out upon the face of the deed or the grant itself."

See, also, to the same effect, *Whitney* v. *Detroit Lumber Co.*, 78 Wis. 240; *Jefferis* v. *Land Co.*, 134 U. S. 178.

The plat shows that the half section line, running north and south, is a straight line throughout, and does not contain a jog or offset at the Indian boundary line, which runs from near the northwest corner to near the southeast corner of the section.

If the theory of the appellant's counsel, that the usual method of surveying was departed from on account of the surveys on either side of the Indian boundary line being made at different times and with reference to that line, is the correct one, the line running from the half-mile post on the south section line to the Indian boundary line, and the one from the north half-mile post south to the Indian boundary line, would not meet at that point so as to form a straight line through the section.

This is admitted by the appellant's counsel in his brief.

An examination of the plat shows that this line is a straight one throughout.

The plat also shows, when the different lots lying east of this line are added together and compared with a like addition of the lots west of it, that the excess of land in the south half of the section was thrown into the west half of the half section.

We conclude from this that the surveyor general, or some

one by his authority, corrected the error of the deputy surveyor, and established the half-section corner at a point forty chains west of the southeast corner of the section, and that it was so platted and returned to the department charged with the sale of the public lands.   *Doe* v. *Hildreth, supra.*

Some objections to the giving in evidence of certain surveys, made by county surveyors, without notice to the landowners adjoining, are discussed in the briefs of counsel.

We have not examined these causes for a new trial, and think it unnecessary to do so, for the reason that giving to the plat of the original survey the importance as evidence that we do, the plaintiff failed to make a case on his own showing, and was therefore not injured by the evidence objected to, even if his objections were well taken.

Judgment affirmed.

Filed March 18, 1892.