## JAMES B. RADFORD vs. ABRAHAM B. JOHNSON.

### Opinion filed November 29, 1898.

**Disputed Boundaries—Government Stakes.**

In cases of disputed boundaries the point marked by the original stakes and monuments placed by the government surveyors, if they can be found, or the place where they were identified, govern.

**Evidence of Location of Corner Stakes.**

Bounds and starting points are questions of fact to be determined by evidence as in other cases.

**Instruction Invading Province of Jury.**

Under the facts in this case, an instruction to the jury that "the line as fixed by the surveyor at this time is presumptively correct," cannot be upheld under section 2028, Rev. Codes, and constitutes reversible error.

**Surveyors Lines Presumption of Accuracy.**

*Held*, further, that the presumption of accuracy given to the surveys of a county surveyor by section 2028, Rev. Codes, refers to such surveys as are made in conformity to the requirements of that and the succeeding sections. Further, that such presumption of accuracy refers to his measurements and computations, and such other acts as are done pursuant to an exact science, or as are expressly provided for by statute, including field notes and plats, but does not extend to a determination of disputed starting points or boundaries.

Appeal from District Court, Cass County; *Pollock, J.*

Action by James B. Badford against Abraham B. Johnson. Judgment for plaintiff. Defendant appeals.

Reversed.

*Morrill & Engerud,* for appellant.

*Newman, Spalding & Stambaugh,* for respondent.

YOUNG, J. The parties to this action own adjoining farms, both situate in the same section, plaintiff's being the southwest quarter and defendant's the southeast quarter. The real dispute is as to the proper location of the boundary line dividing their farms. The tract in controversy consists of a narrow strip about 19 feet wide, and in quantity about one-half acre. Both parties agree upon the

location of the original government corners marking the four corners of the section in which their land is located. Plaintiff fixes the beginning of the dividing line between them at a point on the south section line equidistant from the southeast and southwest corners of said section. The defendant, on the other hand, contends that the true line begins at a point on the south section line, about 19 feet west of the equidistant point where he undertakes to identify the location of the original quarter section corner established by the government surveyors. The plaintiff, alleging ownership in himself, sues defendant for damages for trespassing upon this tract. Defendant answers, likewise asserting ownership, and counterclaims for damages for alleged trespass. The jury returned a verdict for plaintiff. Defendant filed exceptions to the Court's charge, which, together with the refusal of certain requests, all of which are embodied in a settled statement of the case, he now urges as errors upon his appeal from the judgment. At the trial plaintiff rested his case for support upon the oral evidence of the county surveyor of Cass county, whose testimony, so far as it goes to aid in determining the proper location of this disputed line, and after satisfactorily identifying the section corners, which we have observed were not in dispute, is all contained in the following language: "I then placed a stake on the south section line half way between the southeast and southwest corners. * *. * I did not find any quarter stake on the south line of the section." The defendant offered evidence tending to establish the exact location of the original quarter section corner. Defendant requested the following instruction: "The best evidence of the quarter section line between the lands in controversy is the original quarter section post or mound as placed there by the United States surveyors. The mark governs whether the survey was right or wrong. Hence, if you believe from the evidence that the quarter section post or mound was in existance, and was located where the defendant claims it was, then you must be governed by that line in deciding the controversy." The refusal of the foregoing is assigned as error. To this we cannot agree. The Court did charge as follows: "Now it is conceded that the land on both sides of this line originally came from the United States government, and I charge you, gentlemen of the jury, as the law of this case, that in a resurvey of the land which originally belonged to the United States, and which it has caused to be surveyed under its authority, such resurvey must conform to the survey made under the authority of the government, if the mounds and corners of the original government survey can be identified. If the stakes and monuments placed by the government in making the survey to indicate the section corners and quarter section posts can be found, or the places where they were originally placed can be identified, they are to control in all cases. Further, the corners established by the original surveyors under the authority of the United States cannot be altered. Whether properly placed or not, no error in placing them can be corrected by any surveyor deriving

his authority from the laws of the state." Not only does that portion of the charge given and just quoted contain the substance of defendant's request, but as a correct statement of well-settled law it has our approval, and requires no citation of authority to support it.

The following was also excepted to: "The question of fact then, gentlemen of the jury, to be submitted to you is as to where the line between these two contending parties rest, bearing in mind that the line as fixed by the surveyor at this time is presumptively correct, and the burden of proof falls on the defendant to show that it is incorrect, and not according to the government survey." Herein the Court erred. The correctness of the line fixed by the county surveyor, so far as it was based upon courses and distances, and in the absence of the original quarter section corner, was not in dispute. The real issue was the existence or nonexistence of the original quarter section corner. This was a pure question of fact for the jury, and upon its determination on that one point confessedly the one party or the other would prevail on the question of ownership of the tract in dispute. By the instruction given, the jury were directed, in effect, not to weigh his evidence for what it was worth to aid them in determining the point in issue,—that is, the location of the disputed corner and line,—but to take his determination on that point as presumptively correct. This was wrong. We refer to his testimony in the language of the South Dakota Supreme Court in *Arneson* v. *Spawn,* 49 N. W. Rep. 1066, a similar case: "It was simply the evidence of a witness. Its probative value was not fixed by the law, as in the case of his official return, but went to the jury, like any other evidence." It is well settled that bounds and starting points are questions of fact to be determined by testimony, and surveyors have no more authority than other men to determine them upon their own notions. *Cronin* v. *Gore,* 38 Mich. 381; *Case* v. *Trapp,* 49 Mich. 59, 12 N. W. Rep. 908. Campbell, J., speaking for that Court in *Stewart* v. *Carlton,* 31 Mich. 269, said: "It appears to have been supposed that surveyors are competent not only to testify to measurments and distances, but also to pass judgment themselves, and on information of their own choosing, upon the position of lines and starting points. * * * This is a very dangerous error. The law recognizes them as useful assistants in doing the mechanical work of measurement and calculation, and it also allows such credit to their judgment as belongs to any experience which may give it value in cases where better means of information do not exist. But the determination of facts belongs exclusively to Courts and juries. Where a section line or other starting point actually exists is always a question of fact, and not of theory, and cannot be left to the opinion of an expert for final decision." The same judge, in the later case of *Gregory* v. *Knight,* 50 Mich. 61, 14 N. W. Rep. 700, expressed himself in language equally strong: "No one can be disturbed in his estate without the right to have his rights determined by legal process. * * *

The law does not contemplate any such absurdity as the submission of question of title to land to anything but the judicial courts. It is quite manifest that in this case there seems to have been an idea that the exparte action of surveyors and commissioners was entitled to credence and authority upon the true lines and the facts of encroachment. Neither of them can affect vested rights or settled controversies. They may be useful witnesses when they speak of matters with which they are familiar, but they have no greater weight than any one else to determine starting points or boundaries." The trial court without doubt was led to give the instruction complained of by the language found in section 2028, Rev. Codes, which after generally providing for whom and in what manner county surveyors shall make surveys, adds that "his surveys shall be held as presumptively correct." The instruction complained of cannot be upheld in this case by the statute referred to for three reasons: First. It does not appear that the survey relied upon was made in conformity to the requirements of sections 2028-2034, Rev. Codes, inclusive, which provide for the making of field notes and plats, and what they shall contain; also for transcribing them into record books, if the county commissioners shall so require, as well as other matters of detail and for guidance. This is necessary, in our judgment, before the survey of a county surveyor as such becomes presumptively correct under the statute. In holding this view we agree with the interpretation placed upon the same statute in *Arneson* v. *Spawn* (S. D.) 49 N. W. Rep. 1066, wherein the Court said: "When section 689 (our section 2028) says, 'and his survey shall be held presumptively correct,' we think it means his surveys made, authenticated, and proved as provided by the statute." Second. The instruction given made the line established, and not the survey made, presumptively correct. The survey, so far as it related to courses, distances, and measurements, was not in dispute. The line was. The instruction not only gave undue weight to his testimony, which was relatively unimportant on the questions at issue, but gave not to his evidence alone, but to his determination of the line itself, the presumption of accuracy. See *Cockrell* v. *McGuinn,* 4 T. B. Mon. 61; *Ott* v. *Soulard,* 9 Mo. 339; *Robinson* v. *White,* 42 Me. 209. Finally, we are of the opinion that the presumption of correctness which is extended to a survey made by a county surveyor under section 2028, Rev. Codes, refers not only to an official survey, in the sense of being made in compliance with the statute, but means courses, distances, variations, mathematical computation, and such acts as are done pursuant to the methods of an exact science, or as are provided for in the sections referred to, including field notes and plats, but does not include a determination of disputed boundaries or corners. The last, as already noticed, belongs to the courts. Others errors are urged. No useful purpose will be served by discussing them. That already considered is controlling. The judgment of the lower court is reversed, and a new trial granted. All concurr.