(112 N. W. 557.)

---

## M. P. Propper v. Louis Wohlwend

Opinion filed June 24, 1907.

**Public Lands — Boundaries — Evidence of Monuments Prevails Over Field.—Notes and Plats.**

> 1. In all cases of disputed boundary lines, evidence of the location of the original monuments which were established by the government surveyors control over plats, field notes, and all other evidence as to the proper location of such lines, when the point where such monuments were thus located can be definitely established.

**Trial — Directing Verdict — Conflict of Evidence.**

> 2. There was a substantial conflict in the evidence as to whether the original government monument marking the south end of the quarter section line between the lands of plaintiff and defendant was established at the point contended for by the plaintiff or at the point contended for by defendant, and hence it was error to direct a verdict.

Appeal from District Court, Richland County; Allen, J.

Action by M. P. Propper against Louis Wohlwend. Verdict for defendant, and, from an order denying his motion for judgment notwithstanding the verdict or for a new trial, plaintiff appeals.

Reversed and new trial ordered.

Purcell & Divet, for appellant.

Where a grant is taken with reference to a plat, it is not competent to show that the boundaries are different from what is shown by the plat. Beaty v. Robertson, 30 N. E. 706; Golterman v. Schier-

meyer, 19 S. W. 484; Chapman v. Polack, 11 Pac. 764; Davis v. Rainsford, 17 Mass. 207; Cornet v. Dixon, 11 S. W. 660.

Even in case of fraud it can be attacked only by the government. Kirman v. Murphy, 83 Fed. 275; Moore v. Robins, 96 U. S. 530, 24 L. Ed. 848; St. Paul & Pac. Ry. Co. v. Schurmeyer, 74 U. S. 272, 19 L. Ed. 74.

Monuments may be compelled to give way to other descriptions in a deed. Harrel v. Morris, 5 S. W. 625; Murdock v. Chapman, 75 Mass. 156; Buffalo, New York & Erie Ry. v. Stigeler, 61 N. Y. 348; Whitney v. Gray, 31 Am. Dec. 224; Rioux v. Cormier, 44 N. W. 654.

*C. E. Wolfe,* for respondent.

Grants in patents are not according to plats, but the government survey. McGray v. Monarch Elevator Co., 91 N. W. 457; Arneson v. Spawn, 49 N. W. 1066; Dowdle v. Cornue, 68 N. W. 194.

The directed verdict was proper. Where conceded or undisputed facts necessarily show that the evidence in opposition thereto cannot in the very nature of things be true, no conflict arrises. Payne v. Railroad Co., 38 S. W. 308; Southern Ry. Co. v. Smith, 30 C. C. A. 58; Howe v. M., St. P. & S. S. M. Ry. Co., 64 N. W. 102; Medcalf v. St. Paul City Ry. Co., 84 N. W. 633; Badger v. Janesville Cotton Mills, 70 N. W. 687; Groth v. Thomann, 86 N. W. 178; Stafford v. Chippewa Ry. Co., 85 N. W. 1036; Thompson v. Pioneer Press Co., 33 N. W. 856.

Fisk, J. This is an appeal from an order of the district court of Richland county denying plaintiff's motion made in the alternative, for judgment notwithstanding the verdict or for a new trial. The action was brought to recover the possession of and to quiet title to a small strip of land claimed to be a portion of the southeast quarter of section 31, township 130 north of range 52 west, also to recover damages for its use and occupation. The real controversy between these parties arises over a dispute as to the correct location of the boundary line between the southeast and the southwest quarters of said section; plaintiff owning the former, and defendant the latter. Plaintiff acquired title to the southeast quarter through various mesne conveyances from the patentee in a patent from the United States, being Exhibit B, dated October 14, 1884, and defendant acquired title to the southwest quarter directly from the govern-

ment of the United States through a patent, Exhibit A, bearing date June 1, 1893. The original government monuments marking the location of the four corners of said section, as well as the quarter section monuments on the north and the east and west lines of the section, are not in dispute, and are concededly correctly located. The whole controversy originated over the location of the quarter section monument on the south line; such monument having been entirely obliterated. Some time prior to the commencement of the action, defendant erected a fence upon what he claims to be the correct line between these quarters, ever since which time he has occupied and used the land on the west side up to such fence; the plaintiff contending that said fence is seven or eight rods too far east. In its final analysis, the principal controversy between these parties grows out of a difference in their respective methods of ascertaining from what point on the south line of said section such quarter line should properly be run. Certified copies of the government plat of this and some of the adjoining lands as returned by the surveyor general and referred to in the respective patents, Exhibits A and B, were introduced in evidence, and also certified copies of the field notes of the original survey. From both plat and the field notes it appears that the south line of this section was supposed to be a full mile in length; but, as a matter of fact, it is about 226 feet less than a mile.

Plaintiff's counsel contend, as we understand them, that the plat returned to the general land office by the surveyor general, and not the original survey or the field notes thereof reported by the surveyor general, control as to the location of the quarter section line in question, and they advance a very ingenious and plausible argument in support of their contention. They argue that the lands embraced in the sections lying adjacent to the township lines on the west of each congressional township, as well as the sections lying south and adjacent to the north lines of such townships, being the west and north tier of sections in each township, are granted by the government with reference to the plats returned by the surveyor general, and not with reference to the monuments established by the surveyor in the field, and that the plat of this section shows that the southeast quarter, being plaintiff's quarter, is a full quarter containing 160 acres. They base this argument upon the premise that the lands embraced in the west and north tiers, being fractional sections, are governed by a different rule than the other lands in the township,

and that proof of the location of original monuments is not admissible to contradict the plats as returned by the surveyor general. In other words, they contend that, in the conveyance of lands lying in fractional sections, the plats prepared in the office of the surveyor general, and returned by him to the land department, are referred to and made a part of the grant from the government, and hence are absolutely controlling as to the description and extent of the lands thus granted. We think counsel have fallen into error in assuming that these lands are granted by the government with reference to the plat. If the plat was made a part of the grant, as they contend, then their argument would have much force; but, as we read and construe section 2396, Rev. St. (U. S. Comp. St. 1901, p. 1473), relating to the disposal of government lands, the corners of sections and quarter sections, when actually established in the field, must in all cases control as to the location of boundaries, except, perhaps, in the case of known errors which have been corrected by the surveyor general, which, however, is not this case; and, as we understand the authorities, no exception to this rule is made in the disposal of lands in what are known as fractional sections, nor do we perceive any reason why a different rule should obtain in such cases, so far as the question here under consideration is concerned. The patent to the southeast quarter, which was introduced in evidence as exhibit B, does not support appellant's contention. It shows that the government granted this land as the southeast quarter of section 31, not as shown by the plat as contended for by appellant, but the patent, after describing the land, contains the following recital: "Containing 160 acres according to the official plat of the survey of said lands, returned to the general land office by the surveyor general. This recital is no part of the granting clause of the instrument, nor does it constitute a warranty that the quarter sold contains 160 acres. It is a mere recital that, according to the plat as returned by the surveyor general, this quarter section of land contains that many acres. Section 2396, Rev. St. U. S., which provides that "each section or subdivision of section, the contents of which have been returned by the surveyor general, shall be held and considered as containing the exact quantity expressed in such return," does not aid appellant's contention, as this language was intended merely to fix the exact quantity of land to be charged for by the government in the disposal thereof. Heald v. Yumisko, 7 N. D. 422, 75 N. W. 806.

In support of their contention that the plat controls over all other evidence as to the land granted by the patent, counsel cite and rely upon Beatty v. Robertson, 30 N. E. 706, 130 Ind. 589; Golterman v. Schiermeyer, 19 S. W. 484, 111 Mo. 404; Chapman v. Polack, 11 Pac. 764, 70 Cal. 487; Cragin v. Powell, 128 U. S. 691, 9 Sup. Ct. 203, 32 L. Ed. 566; Davis v. Rainsford, 17 Mass. 207; Cornett v. Dixon (Ky.), 11 S. W. 660. We have carefully examined these authorities and fail to see wherein they sustain appellant's contention. Beatty v. Robertson simply holds that, where there is a difference between the field notes of the original survey of public lands and the plat, the latter must control, since it represents the lines and corners as fixed by the surveyor general and by which the land was sold. There was no attempt to prove the actual location of the original corner post or mound as established by the deputy surveyor. The same is true as to Golterman v. Schiermeyer, supra. In that case the facts show that the quarter corner on the west section line, which was in dispute, was blank, and, this being true, the court held that the surveyor general's location of such corner on the plat by which the land was sold must govern. The court expressly recognized the general rule by saying: "The monuments, set by the deputy United States surveyor for the west section corners must control as to the proper location of those corners. The question where they were located, if destroyed, is one of fact, and not of law, for the jury to determine under all the evidence." In Chapman v. Polack, supra, it was said: "The plat resorted to for ascertaining the position of the quarter section stake on the east line of the section was the true method of determining the point, in cases where the position of the quarter section lines are not laid down and their locus fixed; but when, as in this case, the position of the lines has been fixed, and rights have vested with reference to it as established, the position for the quarter section posts is also determined as being at the end of the established line." In Davis v. Rainsford, supra, decided by the Supreme Court of Massachusetts in 1821, the general rule is expressly recognized, but on account of the particular facts in that case, the court made an exception. It is stated in the syllabus: "The general rule that known monuments referred to in the description of land in a conveyance are to govern in the construction, rather than the courses, distances, or computed contents mentioned in such description, is subject to exceptions, as where an adherence to the rule would be plainly absurd." In Cornett v. Dixon, supra, also relied

upon by appellant's counsel, it was held merely that where a patent is made in accordance with a recorded plat and survey, contradictory statements in the surveyor's minutes, as to the length of one of the lines, are insufficient to prove that the statements as to such line in the plat and survey are erroneous. The question as to the controlling effect of original monuments established in the field by government surveyors was not involved in these cases.

The authorities seem to be unanimous in holding to the doctrine adhered to by this court in Radford v. Johnson, 8 N. D. 182, 77 N. W. 601, and, as before stated, no distinction seems to have been made in the rule with reference to the location of lost corners between fractional sections and sections not fractional. Where such original monuments can be located definitely, they control absolutely over all other evidence, including plats and field notes. McGray v. Monarch El. Co., 16 S. D. 109, 91 N. W. 457; Arneson v. Spawn, 2 S. D. 269, 49 N. W. 1066, 39 Am. St. Rep. 783; Dowdle v. Cornue, 9 S. D. 126, 68 N. W. 194; Tyler v. Haggart (S. D.) 102 N. W. 682; Thayer v. Spokane Co., 36 Wash. 63, 78 Pac. 200; Unzelmann v. Shelton (S. D.) 103 N. W. 646; Washington Rock Co. v. Young, 80 Pac. 382, 29 Utah 108, 110 Am. St. Rep. 666; Kleven v. Gunderson, 104 N. W. 4, 95 Minn. 246; Stonewall Phosphate Co. v. Peyton et al., 39 Fla. 726, 23 South 440; Wheeler v. Benjamin, 136 Cal. 51, 68 Pac. 313. The opinion in Stonewall Phos. Co. v. Peyton, supra, contains a very clear statement of the rule as we understand it to be, and we quote therefrom as follows: "The grant of all lands presupposes an actual survey of them, and the patent must be considered as conveying the land as actually surveyed. Therefore, when it can be shown that a line was actually run, or division made, by the surveyor in surveying the land, and that such line or division was marked by corners or natural objects, and such survey is established, the grantee in a patent will take according to such actual survey, notwithstanding any mistake in description as to courses and distances contained therein, or the quantity of land stated to be conveyed. It is a familiar rule that courses and distances must give way to natural as well as artificial objects, when they are inconsistent. * * * The quantity of land contained in a patent may be considered as ascertaining the extent of the grant in area, but cannot control the actual boundary limits of the land as located on the ground by the original government survey. This is in accord with the letter and spirit of section 2396, c. 9, Rev.

St. U. S. This section directs the subdivision of the public lands into quarter sections, and that corners located and marked in the field shall be established as the proper corners of sections and quarter sections, and that corners of half and quarter sections not so marked shall be placed as nearly as possible equidistant from the two corners standing on the same line. The second paragraph of the section provides that the boundary lines actually run and marked in the field shall be established as the proper boundary lines of the sections or subdivisions. According to all the authorities, the boundaries as actually located by the original survey, must, when established, control in ascertaining the quantity of land contained in a patent, and the same is true of a deed unless a clear intent to the contrary is expressed therein. The position taken by counsel for appellees, that the action of the local land officers in dividing the section equally, or practically so, will control the description of the land as to section and quarter-quarter section according to the original survey, is not correct.   *   *   *   As stated above, the grant is conclusively presumed to be made upon an actual field survey of the land, and the reference in the patent to the section, township, and range must be taken as referring absolutely to the actual ground survey of the land as originally made, and upon which the grant was unquestionably made. The surveyors were the officers whose duty it was to subdivide the township into sections and quarter-quarter sections, and mark the boundary thereof, and, this having been done, the local land officers granted them, and in accordance with such survey. They had no authority to do otherwise."

See, also, Ogilvie v. Copeland, 145 Ill. 98, 33 N. E. 1085. We quote from page 111 of 145 Ill., page 1087 of 33 N. E., as follows: "It is true, it is required by the United States statutes that 'the boundary lines actually run and marked in the surveys, returned by the surveyor general, shall be established as the proper boundary lines of the sections or subdivisions, for which they were intended; and the length of such lines, as returned, shall be held and considered as the true length thereof.' So, also, it requires 'that the corners marked in the surveys returned by the surveyor general, shall be established as the proper corners of sections or subdivisions of sections, which they were intended to designate.' Section 2396, Rev. St. U. S. And when the measurement of the line as returned does not agree with the distance between the corners thus establish-

ed, and between which it is assumed to be the measurement, it must be disregarded. Monuments control as to courses and distances."

Several of the foregoing authorities, it will be noticed, involved lands in what are known as fractional sections. But this fact was not considered important. We therefore conclude that the trial court did not err in receiving evidence tending to show the location of the original quarter-section post on the south line of said section at a point different from that shown by the plat; nor did it err in denying plaintiff's motion for a directed verdict and for judgment notwithstanding the verdict.

At the close of the testimony, the court directed a verdict in defendant's favor, and this is assigned as error, as is also the court's ruling in denying a motion made by plaintiff, in the alternative, for judgment notwithstanding the verdict or for a new trial. These assignments are predicated upon the theory that there was a sufficient conflict in the testimony as to the location of this quarter section monument by the deputy surveyor to require a submission of the question to the jury. In this we think counsel's contention is clearly correct. We will not detail at length the testimony produced by plaintiff tending to establish the location of such monument at the point contended for by him, but suffice it to say that, from a careful reading of the record before us, we are convinced that there was a substantial conflict in the testimony upon this point, and hence that the court erred in making the rulings complained of. We do not think the case comes within the rule invoked by respondent's counsel to the effect that known physical facts must control over all other testimony. It is undoubtedly true that no amount of evidence will suffice to raise a question for the jury, when such evidence is opposed to known physical facts or phenomena; but we fail to see how this rule is applicable to the facts before us. The testimony in behalf of the plaintiff tended to establish the fact that the quarter post in question was originally located at a point about 40 chains west of the southeast corner of the section, while that of the defendant tended to show that it was located at a point 40 chains west of the southwest corner of said section, and it was for the jury to say, under all the evidence, what the fact was. See Black v. Walker, 7 N. D. 414, 75 N. W. 787, in which a very similar question was involved, and where the same conclusion was reached. In that case there was a dispute as to a township boundary line, and, after referring to the evidence the court said: "Appellants insist

that, as no witness went upon the stand to contradict either Mr. Walker or Mr. Kenyon, and as they each positively swore that the original corner was at point B, any finding of the jury to the contrary must be set aside as without support in the testimony. But that is by no means true. The most direct and positive testimony may be completely demolished by circumstantial evidence, or overcome in the minds of a jury or the mind of a court by the establishment of other facts inconsistent therewith. This case is a good illustration. If the jury believed that it was only 320 rods from the southeast corner of section 36 to point C (and a number of witnesses so testify, and no one assumes to contradict it), and if the jury also believed that the original section corner between the said sections 1, 2, 35 and 36 was located 320 rods west from the southeast corner of 26 (and the original field notes so declare, and no one assumed to dispute the recital), then the jury was bound to believe that the original stake had been moved after the corner had been established, *   *   *   or that the witnesses mistook something else for the original stake and mound. The two states of facts could not coexist. There was strong evidence of the existence of each. It was the province of the jury to say which did in fact exist, and their finding cannot be disturbed."

For the errors in directing a verdict and in denying plaintiff's motion for a new trial, the order appealed from must be reversed, and a new trial ordered. All concur.