Filed 1/22/18 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2018 ND 29

Craig Benson, Plaintiff and Appellant

and

Brenda Benson, Plaintiff

v.

Feland Brothers Properties, Danny & Gwen 

Aftem, Defendants and Appellees

and

all persons unknown claiming any estate 

or interest in, or lien or encumbrance upon 

the property described in the Complaint, 

whether as an heir, devisee legatee, creditor, 

or personal representative of a deceased 

person, or under any other title of interest, Defendants

No. 20170132

Appeal from the District Court of Bottineau County, Northeast Judicial District, the Honorable Lee A. Christofferson, Judge.

AFFIRMED.

Opinion of the Court by Tufte, Justice.

Craig Benson, self-represented, Minot, N.D., plaintiff and appellant.

Arne F. Boyum, Rolla, N.D., for defendants and appellees.

Benson v. Feland Brothers Properties

No. 20170132

Tufte, Justice.

[¶1] Craig Benson (“Benson”) appeals from the district court’s judgment defining the boundaries of Outlot 11 and awarding Feland Brothers Properties (“the Felands”) the northern portion of Outlot 53 through adverse possession.  We affirm, concluding the district court did not clearly err in defining the boundaries of Outlot 11 or in concluding the Felands have adversely possessed the northern portion of Outlot 53.

I

[¶2] In 1951, Ruby Benson, Benson’s grandmother, acquired a 600 by 450 foot tract to the west of Whiskey Bay on Lake Metigoshe.  This tract of land was subdivided into several lots.  The Felands own Outlot 10, Craig and Brenda Benson (“the Bensons”) own Outlot 53, and Danny and Gwen Aftem (“the Aftems”) own Outlot 11.  These lots were the subject of the following conveyances relevant to the issues on appeal.  Outlot 10 was conveyed by A.R. Taralseth to Francis and Gloria Olson (“the Olsons”) in 1980, then to Wade and Mary Olson in 1997, who sold to the Felands the next day.  Outlot 53 was conveyed by Ruby Benson to Richard Benson (Craig’s father) in 1978, then to Craig Benson in 2010.  Outlot 11 was conveyed by Ruby Benson to Taralseth in 1953, then to Raymond Stenseng and Curtis Foss in 1970, then to Foss in 1978, and finally to the Aftems and family in 2003.

[¶3] Outlot 53 is the result of a survey completed by Robby Berard of Ackerman Surveying in 2010.  The plat shows that Outlot 53 consists of a northern portion (boomerang-shaped land to the east of Outlot 10) and a southern portion which is shown as “Outlot 53” on the plat.
(endnote: 1)  It is the northern portion of Outlot 53 lying between Outlot 10 and Whiskey Bay that is disputed in the adverse possession claim.

[¶4] The northern portion of Outlot 53 was largely ignored by the record owners, Richard Benson and then Craig Benson.  Chris Romfo, a neighbor, testified that he rented Outlot 53 from Richard Benson for about nine years and understood that it was only for the southern part of Outlot 53.  Romfo testified that Richard Benson never mentioned owning the northern part of Outlot 53.  Although Craig Benson testified that he and his family regularly stayed at the lake for many years, he was vague as to the use of the northern part.  He testified that he didn’t build anything on the northern lot, except for a small bridge across the creek, apparently connecting the north and south portions of the lot.  This bridge was later removed.  After the 2010 survey was completed, he placed “no trespass” signs on the northern lot and cut trees down.  He also began warning others not to use the property.

[¶5] The Olsons made a number of improvements to the northern portion of Outlot 53.  The Felands testified that the Olsons built a rock wall and fire pit and drilled a well.  The Felands made use of the northern portion of Outlot 53 as well.  They hired people to mow the lawn, made use of the yard, used the well, put their own dock in the water, docked a paddle boat, placed a picnic table on the dock, and parked a mobile home trailer on part of the land.  They have paid waterfront taxes for 50 feet of bay waterfront land since at least 2003.  Greg Feland testified that according to the Bottineau County records, Wade Olson had paid waterfront taxes as well.  As platted, Outlot 10 does not have any waterfront on Whiskey Bay that would give rise to waterfront taxes.

[¶6] A creek runs along the southeast boundary of Outlot 11 (L-2 and L-3 on Outlot 53’s plat), which separates Outlot 11 and Outlot 53.  The creek has narrowed as a result of dredging and clearing of trees.  Surveyors Berard and Anderson from Ackerman Surveying stated they were unaware of a creek when they surveyed the area and platted Outlot 53.  Upon visiting the area with the parties, the district court found that the creek remained visible.  Benson testified that the mouth of the creek connects with Whiskey Bay.

[¶7] The Bensons sued the Felands and Aftems to quiet title in all of Outlot 53.  The Felands and Aftems counterclaimed, arguing that they own the northern portion of Outlot 53 and title should be quieted in their favor.  Alternatively, the Felands and Aftems argued that they acquired the northern portion of Outlot 53 through adverse possession.  After a bench trial, the district court defined the southeastern boundary of Outlot 11 as the corner of L-8 and L-9 on Outlot 53’s plat, awarded the Felands the northern portion of Outlot 53 on the basis of adverse possession, and quieted title to the southern portion of Outlot 53 in favor of the Bensons.

II

[¶8] Benson argues that the district court erred in defining Outlot 11’s boundaries.  He contends the district court should have followed the boundaries as set forth by Surveyor Berard in Outlot 53’s plat.

[¶9] “Where a section line or other starting point actually exists is always a question of fact . . . .”  
Radford v. Johnson
, 8 N.D. 182, 184, 77 N.W. 601, 602 (1898) (quoting 
Stewart v. Carleton
, 31 Mich. 270, 273 (1875)).  “A trial court’s findings of fact are clearly erroneous if they are induced by an erroneous view of the law, there is no evidence supporting them, or, although there is some evidence supporting them, on the entire record we are left with a definite and firm conviction a mistake has been made.”  
Nord v. Herrman
, 2001 ND 11, ¶ 7, 621 N.W.2d 332.

[¶10] “As a general rule, the boundary line between adjacent properties is determined by referring to the deeds and the intention of the parties as reflected by the description in the deeds, and when there is no ambiguity in the descriptions they are to be taken as the conclusive evidence of the intention of the parties.”  
Hansford v. Silver Lake Heights, LLC
, 280 P.3d 756, 760 (Kan. 2012).  “Where such original monuments can be located definitely, they control absolutely over all other evidence, including plats and field notes.”  
Propper v. Wohlwend
, 16 N.D. 110, 115, 112 N.W. 967, 969 (1907).

[¶11] Here, the surveyor located no original pins marking the original rectangular tract of land.  The deeds of Outlot 11 consistently describe the location of the northeastern boundary point as “easterly to the junction of high water line and center line of creek, thence along center line of creek in a southwesterly direction.”  Although a water line may shift over time, it may be used in a legal description of a property’s boundary.  
See State ex rel. Sprynczynatyk v. Mills
, 1999 ND 75, ¶ 5, 592 N.W.2d 591 (stating that “[w]here a water line is the boundary line of a given lot, that line, no matter how it shifts, remains the boundary”).  It is immaterial whether a change in the creek’s condition was caused naturally or artificially.  
See id.
 at ¶¶ 9-10.

[¶12] Thus, the boundary point remained at the intersection of the high water line and the center line of the creek.  Surveyors Berard and Anderson were not aware of any creek in the area, and thus it did not factor into their determination of boundaries when they constructed Outlot 53’s plat.  The district court determined the boundary point was at the corner of L-8 and L-9 on Outlot 53’s plat.  Benson himself testified that the creek connects to Whiskey Bay.  Because L-8 and L-9 are approximately where the creek and the bay now meet, the district court’s determination of Outlot 11’s boundaries was not clearly erroneous.  As for Outlot 11’s northern boundary extending further into Outlot 10 than is shown on Outlot 53’s plat, this does not affect the Bensons.  The Felands do not challenge this boundary line on appeal.

[¶13] Benson also argues that redefining the boundaries is a violation of N.D.C.C. § 47-20.1-12 (the “Survey and Corner Recordation Act”).  This statute provides:

No United States government survey corner nor any corner established by any registered land surveyor, monumented as herein prescribed, shall be disturbed, removed, or in any manner changed by any person in the prosecution of any public or private work.  Whoever shall violate any of the provisions of this section shall be guilty of an infraction.

N.D.C.C. § 47-20.1-12.  The plain-language of this statute shows it punishes the criminal conduct of physically removing survey corners from the ground.  It does not prevent the district court from defining boundaries consistent with legal descriptions in deeds but differently from a survey.  
See generally Radford
, 8 N.D. at 184-85, 77 N.W. at 602-603 (discussing the role of surveys).

III

[¶14] Benson argues the district court erred by awarding the Felands the northern portion of Outlot 53 through adverse possession.

[¶15] “Whether there has been an adverse possession is a question of fact, which will not be reversed on appeal unless it is clearly erroneous.”  
Moody v. Sundley
, 2015 ND 204, ¶ 11, 868 N.W.2d 491.  “To satisfy the elements for adverse possession, the acts on which the claimant relies must be actual, visible, continuous, notorious, distinct, and hostile, and of such character to unmistakably indicate an assertion of claim of exclusive ownership by the occupant.”  
Id.
  While Benson states that none of the elements of adverse possession were met, he provides an argument only for continuousness, exclusiveness, and timeliness under the statutory period.  Thus, only those three elements will be reviewed.  
See Olander Contracting Co. v. Gail Wachter Investments
, 2002 ND 65, ¶ 27, 643 N.W.2d 29 (stating that “without supportive reasoning or citations to relevant authorities, an argument is without merit”).

[¶16] Benson argues the continuousness element was not met, because the Felands were unaware of how the prior owners of Outlot 10 used the northern portion of Outlot 53.  He does not provide any authority, however, to support the proposition that current owners must be personally aware of the prior owners’ actions for the acts to be continuous.  The record supports the district court’s findings that the prior owners of Outlot 10, the Olsons, built a stone wall and fire pit and drilled a well on the northern portion of Outlot 53.  Further, Greg Feland testified that Wade Olson had paid waterfront taxes on the disputed property prior to Feland’s ownership.  The Felands have used the yard, hired individuals to mow the lawn, used the water well, owned a dock on the shore, placed their picnic table on the property, moved their paddle boat alongside the dock, and parked a mobile home trailer on part of the land.  They have also paid waterfront taxes on the disputed property.  This use of the northern portion of Outlot 53 for summertime activities has proceeded uninterrupted; thus, the acts have been continuous.

[¶17] Benson argues the Felands are “unable to clearly identify exclusive ownership of pivotal monuments, such as the construction of the stone wall, and provided no clear and convincing evidence that Francis Olson built the stone wall or drilled the water well, therefore [failing] to unmistakably indicate an assertion of claim of exclusive ownership.”  Exclusiveness refers to preventing others from possessing the property.  
See Moody
, 2015 ND 204, ¶ 19, 868 N.W.2d 491 (stating that “[t]o be effective as a means of acquiring title, an adverse claimant’s exclusive possession must be such as to operate as an ouster or disseisin of the owner of legal title, and the owner must be wholly excluded from possession by the claimant”).

[¶18] The district court found that Benson’s testimony was vague as to the use and control of the land over the past twenty years.  Further, while Steve Mosser, a high school classmate of Benson’s, testified that his family and Benson’s had camped in the area since 1997, it was unclear whether they had camped within the disputed northern portion of Outlot 53.  The Olsons made a number of improvements on the property.  Romfo, a neighbor, testified that he rented Outlot 53 from Richard Benson for nine years and Richard never stated that he owned the northern portion.  Romfo understood that he was renting only the southern portion of Outlot 53.  The Felands have used Outlot 53 seasonally in the summers since acquiring the property from Wade and Mary Olson in 1997.  Thus, the district court’s finding that the northern portion of Outlot 53 was exclusively used by the Olsons and then the Felands was supported by the record and was not clearly erroneous.

[¶19] Benson argues that the statutory period of twenty years has not been met by the Felands.  He contends that because the Felands purchased Outlot 10 in 1997 and this suit commenced in 2015, they did not meet the statutory period.  
See
 N.D.C.C. § 28-01-04 (statutory period of twenty years is measured from commencement of a suit).  The statutory period of twenty years, however, is met by tacking on the years that the Olsons used the land.  
See James v. Griffin
, 2001 ND 90, ¶ 11, 626 N.W.2d 704 (stating that “where successive adverse occupants hold in privity with each other under the same claim of title, the time limit for maintaining an action may be computed by the last occupants from the date the cause of action accrued against the first adverse user”).  Benson argues that it would be improper to tack on additional time for the Olsons because the Felands were unable to identify the way in which the Olsons used the property.  As stated above, Benson provides no support for this proposition, and the record indicates that the Olsons made adverse use of the land.  Thus, the district court did not clearly err in finding the statutory period was met.

[¶20] Benson has not shown that the district court clearly erred in concluding that the Felands have adversely possessed the northern portion of Outlot 53.

IV

[¶21] Because the district court did not clearly err in defining the boundaries of Outlot 11 or in concluding the Felands have adversely possessed the northern portion of Outlot 53, we affirm the district court judgment.

[¶22] Jerod E. Tufte

Daniel J. Crothers

Lisa Fair McEvers

Jon J. Jensen

Gerald W. VandeWalle, C.J.

FOOTNOTES
1:
.  Plat of Outlot 53.