## William Stewart v. Israel E. Carleton.

*Bill to quiet title: Ouster: Possession: Evidence.* Under a bill to remove a cloud upon complainant's title to a strip of land about which a controversy has arisen, growing out of a dispute as to the boundary between adjacent parcels, proof of the assertion by the defendant of ownership over the tract in question, by various acts not acquiesced in by complainant, is insufficient, where it appears defendant has not fenced it separately, nor defined his own exact boundary by any very clear lines, to establish such a complete ouster as will preclude the relief sought, for want of possession.

*Boundary line: Fence: Acquiescence: Mistake: Deed: Estoppel.* Where a fence has been treated and acquiesced in as the correct boundary line between adjacent owners for fifteen years, the boundary ought not to be disturbed, even if there were some variance from the true line; but where such fence was the line actually agreed upon, and a deed giving distances had been accepted under assurances that it did not vary such boundary line, the grantor in such deed, and all claiming under him, except an honest purchaser without notice, would be estopped from setting up any different boundary.

*Evidence: Boundaries: Surveyors: Experts: Opinions: Questions of fact.* The question of the location of a section line or a starting point is one of fact for the jury, and not one of theory, to be determined finally upon the opinion of surveyors as experts.

*Boundary lines: Evidence: Opinions: Surveyors.* In this case the only evidence of the location of a section line, which is made a starting point in the description of premises in a deed, is the opinion of a surveyor, based on his examination of records, deeds and abstracts and other documents from which he protracted his maps and plans, and not upon any *data* made known by testimony in the cause; it would be clearly inadmissible to disturb a tangible and established boundary on any such evidence.

*Heard January 26.    Decided January 29.*

Appeal in Chancery from St. Clair Circuit.

*Frank Whipple* and *A. E. Chadwick,* for complainant.

*Atkinson Bros.,* for defendant.

CAMPBELL, J.

The object of the bill in this case is to rectify the boundaries, and remove a cloud on the title of a portion of a lot of land owned by complainant in Port Huron.

The entire lot of complainant is a parcel of land formerly owned by Beard and Haynes, and the easterly end

slopes downward to a piece of somewhat lower ground, concerning which the difficulty seems to have arisen. In January, 1856, Beard and Haynes agreed to sell to the Port Huron & Milwaukee Railroad Company, the eastern part of a larger tract of land which they then owned (and of which the premises in dispute are a part), and in the contract the western boundary of the railroad tract was to be bounded "*by the slope of the hill.*" A fence was built then or previously, which ran along the base of the slope, and which complainant claims was the line of the tract in question. In July, 1856, Beard and Haynes, at the request of the company, and in pursuance of the contract, executed a deed, which they were assured by the company's agent and engineer was in conformity with the contract, whereby the western boundary was fixed at four hundred and twenty feet from the easterly line of section fifteen, of which the tract was a part. The reason given for mentioning distances was, that the company preferred an exact measurement; and the parties, when they conveyed, were assured that the actual survey put the line where they had agreed it should be, at the fence, or a trifle east of it.

This fence continued undisturbed, and coincided in direction with the line of railroad lands bought of adjoining owners.

In August, 1856, the land west of the fence was conveyed to complainant's grantors, and in the deed was described, not by metes and bounds, but by adjoining property, and the easterly line was defined as "*the line of lands sold by said Beard and Haynes to the Port Huron & Milwaukee Railroad Company.*"

In October, 1871, Carleton, the defendant, obtained a deed from the Port Huron & Lake Michigan Railroad Company (which appears to have purchased the property of the Port Huron & Milwaukee Railroad), and in that deed the land he bought was described as bounded "On the west by the west line of said railroad company's lands; the same being a line parallel with, and four hundred and

twenty feet distant west from the east line of said section fifteen." Since that time Carleton has asserted ownership over the tract in dispute, by various acts not acquiesced in by complainant, but has not fenced it separately, nor defined his own exact boundary by any very clear lines, and it does not appear to us that there has been any complete ouster.

Upon the testimony in the case the facts do not seem to us to be left in any doubt. There can be no question but that all parties assumed and acted on the assumption, that the fence was the boundary, and that no one ever questioned it until defendant made his purchase. The railroad company from whom he bought did not suppose there was any controversy about lines, and had no actual knowledge on the subject at all. The line had been acquiesced in as properly located, for fifteen years before defendant purchased. And although defendant undertakes to make out that, before he purchased, complainant was fully informed of the true boundaries, and admitted the error, his cross-examination, in connection with other proofs, furnishes a complete refutation of any such notion, and shows defendant to have made the purchase with full knowledge of the real state of things, and not in good faith.

In this view of the case, we think defendant is in no better position than the original railroad company would have been, and subject to any remedy which could have been enforced against them. There is nothing to show any fault in complainant for not discovering an error which he had no reason to suspect, and no means of correcting without a survey, which he had reason to suppose had been correctly made already.

Under all these circumstances we think the case comes within familiar equitable doctrines, and does not depend on the statutory remedy to quiet title. The landmarks which have been recognized and acted on so long, ought not to be disturbed, even if there had been some variance from the lines intended. But here the line so fixed was the line

actually agreed upon; and if the deed varied from the contract it was by mutual mistake or fraud; and we do not think any fraud was designed. If it had been, the equity would be still stronger. Unless against an honest purchaser without notice, there is no reason for refusing relief, and defendant is not in that relation.

We have thus far proceeded, as perhaps we are bound to proceed, on the assumption made by all the parties, that a mistake was actually made. And we affirm the decree on that basis.

But the facts require some reference to the testimony of boundary, which seems to us to have been introduced on a somewhat dangerous theory. It appears to have been supposed that surveyors are competent not only to testify to measurements and distances, but also to pass judgment themselves, and on information of their own choosing, upon the position of lines and starting points. This is not the only case in which we have encountered such evidence on important private rights; and surveyors seem to have the idea that they may act entirely on their own judgment in determining important private and public rights.

This is a very dangerous error. The law recognizes them as useful assistants in doing the mechanical work of measurement and calculation, and it also allows such credit to their judgment as belongs to any experience which may give it value in cases where better means of information do not exist. But the determination of facts belongs exclusively to courts and juries. Where a section line or other starting point actually exists, is always a question of fact, and not of theory, and cannot be left to the opinion of an expert for final decision. And where, as is generally the case in an old community, boundaries and possessions have been fixed by long use and acquiescence, it would be contrary to all reason and justice to have them interfered with on any abstract notion of science. The freaks of opinionated surveyors have led to much needless and vexatious litigation and disturbance, and it is much to be desired that

31 MICH.—35.

they should be confined to their legitimate place as witnesses on fact, and not on opinions, which lie beyond the domain of science.

If we examine the testimony in the present case carefully, we find that there is no legal evidence, properly receivable, which shows that complainant's boundary is not strictly correct. The presumption is quite as strong in favor of Gray's survey, as of Carleton's work, and there is nothing except assumption to show where the east line of section fifteen is to be found. Defendant professes to base his opinion on an examination of records, deeds and abstracts and other documents, from which he protracted his maps and plans. But neither he, nor any other witness, testifies from any *data* made known by testimony in this cause. Whatever may be the probabilities of correctness, this is not the proper way of proving boundaries. And we should not be justified in holding complainant's line disproved, even if not fixed by the conduct and acquiescence of the parties.

The decree must be affirmed, with costs.

GRAVES, CH. J., and COOLEY, J., concurred.

CHRISTIANCY, J., did not sit in this case.