JOHN C. DIEHL AND CHRISTINE DIEHL V. FERDINAND ZAN-
GER AND MAGDALENE ZANGER.

*Ejectment—Boundaries—Practical location—Resurvey.*

In defense to an action of ejectment based upon an alleged mistake
in the original survey, evidence is admissible that the existing
boundaries had been defined for more than twenty years by
buildings, fences, and harmonious occupancy.

A re-survey, made after the monuments of the original survey have
disappeared, is for the purpose of determining where they were,
and not where they ought to have been.

A long-established fence is better evidence of actual boundaries set-
tled by practical location than any survey made after the mon-
uments of the original survey have disappeared.

Long practical acquiescence in a boundary, between the parties con-
cerned, may constitute such an agreement on it as to be con-
clusive, even if it had been erroneously located.

Error to Superior Court of Detroit. Submitted Octo-
ber 25. Decided October 31.

EJECTMENT. Defendants bring error.

*Henry M. Campbell* and *Alfred Russell* for plaintiff in
error. Long acquiescence and practical location are
controlling proof of boundaries, *Baldwin v. Brown*, 16
N. Y., 359; *Reed v. Farr*, 35 N. Y., 113; *Bower v. Earl*,
18 Mich., 367.

GRAVES, J. This ejectment was brought by defend-
ants in error for a strip of land four feet and seven
inches wide, and claimed in the case as being the west-
erly four feet and seven inches of the easterly half of
lot thirty-nine of the subdivision of out-lot one hundred
and eighty-two of the Rivard farm in the city of Detroit.

February 7, 1873, plaintiffs in error owned this lot
thirty-nine (39), and at that time, by deed, granted to
defendants in error the easterly half according to the
recorded plat, "together with the dwelling house being

39 MICH.—76.

thereon," and about a month later they went into posses-
sion under the grant and have since occupied accordingly.
At the time of the grant a fence which still remains was
standing at the east between defendants in error and the
adjoining proprietor of lot thirty-eight.   The occupancy
on each side was bounded by the fence, and defendants
in error have continued to hold under their deed from
that fence twenty-four feet westerly and to the fence
dividing the lot into halves, including a house and barn
situated on the parcel.

Defendants in error alleged and gave evidence tend-
ing to show that the fence between their occupancy and
that east on lot thirty-eight was four or five feet too far
east; that they did not know there was any mistake
about boundaries; and that the question had not been
mentioned between them and plaintiffs in error until a
short time before this suit was commenced.

They further gave evidence tending to show that
according to a recent survey made by a surveyor of long
experience in Detroit, all the lots in the subdivision of
out-lot one hundred and eighty-two are out of the way;
that the fences and buildings on all the lots are incor-
rectly located; that the owner of the lot on Prospect
street,—which street bounds the subdivision on the
east,—has encroached on said street between four and
five feet, and that the owners of lots west of that lot,
as they actually occupy, respectively encroach on the
owner next east to the same extent, and that for three
or four blocks the lines of the lots along Prospect street
encroach on the street between four and five feet.   They
also gave evidence tending to show that according to this
survey the true line would run through the dwelling
house on the westerly half of lot thirty-nine where plain-
tiffs in error reside.

The plaintiffs in error submitted evidence conducing
to show, among other things, that lots thirty-nine and
forty, as well as other contiguous lots in the subdivision,
had for twenty years and upwards been identified and

defined in their position and extent upon the ground by buildings, fences and harmonious occupancy, and that at the very time of the grant to defendants in error the physical evidences of recognized and long admitted bounds which plaintiffs in error contend for, were visible and apparent to everybody. There was no conflicting evidence in regard to these facts. They were not disputed, and there is no evidence that the practical locations and proprietary and possessory recognitions ever deviated until after the remarkable results of the late survey. The evidence was abundantly sufficient to require the case to be submitted to the jury on the defense. If believed, it was competent for the jury to find that the east line of lot thirty-nine had become fixed and established at the place marked by the fence.

The court however refused to regard this evidence as having any force, and in effect withheld it.

He instructed the jury to find for defendants in error. The matter of defense the court thus refused to recognize is within the doctrine which has been expounded and fully approved by this court in several cases. *Smith v. Hamilton*, 20 Mich., 433; *Joyce. v. Williams*, 26 Mich., 332; *Stewart v. Carleton*, 31 Mich., 270; *Pratt v. Lewis*, ante p. 7. And in some of them the impropriety of disregarding the various landmarks which time and actual occupancy and improvements and the behests of usage and general acquiescence have produced, in deference to the disordering achievements of some modern survey, has been distinctly adverted to and explained. This record contains enough to justify such observations. The requests of plaintiffs in error should have been given.

The judgment is reversed with costs, and a new trial ordered.

CAMPBELL, C. J. and COOLEY, J., concurred.

COOLEY, J. The judge below took this case from the jury, instructing them that on the facts the plaintiffs were entitled to recover. We think, on the other hand,

that if he had submitted the case to the jury on the facts, it would have been their plain duty to return a verdict for defendants.

The controversy concerns part of a lot on a plat of a subdivision of a part of outlot 182, Rivard farm, surveyed by Thomas Campau in 1850, and recorded in 1851. There are forty-eight of these lots in the subdivision. Whether they have all been sold off and improved by the purchasers we are not informed, but it appears from the record that many of them have been. It also appears that there has been a practical location of a street on one side the plat and of other streets across it, and also of the lot lines. The lot the boundary of which is in dispute in this case has been fenced in for twenty years by fences on the supposed lines, and it does not appear that the lines have been disputed until recently. The adjoining lots have also been claimed, occupied and improved according to the practical location of the lines.

This litigation grows out of a new survey recently made by the city surveyor. This officer after searching for the original stakes and finding none, has proceeded to take measurements according to the original plat, and to drive stakes of his own. According to this survey the practical location of the whole plat is wrong, and all the lines should be moved between four and five feet to the east. The surveyor testifies with positiveness and apparently without the least hesitation that "the fences and buildings on all the lots are not correctly located" and there is of course an opportunity for forty-eight suits at law and probably many more than that.

When an officer proposes thus dogmatically to unsettle the landmarks of a whole community, it becomes of the highest importance to know what has been the basis of his opinion. The record in this case fails to give any explanation, but the reasonable inference is that the surveyor has reached his conclusion by first satisfying himself what was the initial point of Mr. Campau's

survey, and then proceeding to survey out the plat anew with that as his starting point. Of course by this method if no mistake is made, there is no difficulty in ascertaining with positive certainty where, according to Mr. Campau's plat, the original street and lot lines ought to have been located; and apparently the surveyor has assumed that that was all he had to do.

Nothing is better understood than that few of our early plats will stand the test of a careful and accurate survey without disclosing errors. This is as true of the government surveys as of any others, and if all the lines were now subject to correction on new surveys, the confusion of lines and titles that would follow would cause consternation in many communities. Indeed the mischiefs that must follow would be simply incalculable, and the visitation of the surveyor might well be set down as a great public calamity.

But no law can sanction this course. The surveyor has mistaken entirely the point to which his attention should have been directed. The question is not how an entirely accurate survey would locate these lots, but how the original stakes located them. No rule in real estate law is more inflexible than that monuments control course and distance,—a rule that we have frequent occasion to apply in the case of public surveys, where its propriety, justice and necessity are never questioned. But its application in other cases is quite as proper, and quite as necessary to the protection of substantial rights. The city surveyor should, therefore, have directed his attention to the ascertainment of the actual location of the original landmarks set by Mr. Campau, and if those were discovered they must govern. If they are no longer discoverable, the question is where they were located; and upon that question the best possible evidence is usually to be found in the practical location of the lines, made at a time when the original monuments were presumably in existence and probably well known. *Stewart v. Carleton*, 31 Mich., 270. As between

old boundary fences, and any survey made after the monuments have disappeared, the fences are by far the better evidence of what the lines of a. lot actually are, and it would have been surprising if the jury in this case, if left to their own judgment, had not so regarded them.

But another view should have been equally conclusive in this case. The long practical acquiescence of the parties concerned, in supposed boundary lines, should be regarded as such an agreement upon them as to be conclusive even if originally located erroneously. We had occasion to apply this doctrine in *Joyce v. Williams,* 26 Mich., 332, and need not enlarge upon it here. See also *Smith v. Hamilton,* 20 Mich., 433; *Stewart v. Carleton,* supra.

I agree with my brethren that the case should be sent back for a new trial.

CAMPBELL, C. J., concurred.

MARSTON, J., did not sit in this case.