## BOUNDARY LINES BETWEEN CITY LOTS.

[Common Pleas Court of Van Wert County.]

J. W. WILSON AND HELEN WILSON v. GEORGE SIDLE AND ANNA SIDLE.*

Decided, August 30, 1906.

*Ejectment—And Adverse Possession—Boundary Lines Where the Original Monuments have Disappeared—Value of Ancient Fences as Evidence—Recent Surveys from an Assumed Starting Point—Presumption as to Different Landmarks and Lines—Constructive Possession—Admission by Holder that it was not Adverse—Notice of Adverse Claim.*

1. In a controversy over the location of a boundary line between city lots, the original monument having disappeared, old boundary fences are by far the better evidence of where the lot lines actually are.

2. The presumption favoring the fence as establishing said line is not overcome by the fact that upon a resurvey based upon no original monument another line is established.

3. Where the description shows the boundary line to be a straight line, it is established by the wall of a permanent building standing for the statutory period, even though the building does not extend the entire length of the boundary. The occupancy was such as to give notice of the extent of the adverse claim.

MATTHIAS, J.

This is an action in ejectment. The plaintiffs seek to oust the defendants from the possession of a strip of land twenty-one inches in width off the north end of the south half of in-lots Nos. 63 and 64 in the original plat of the village (now city) of Van Wert. Plaintiffs say that they are the owners of said strip, being seized in fee simple thereof, and that the defendants unlawfully keep plaintiffs out of the possession of said premises.

The answer of defendants contains three separate defenses: 1. A general denial; 2. The statute of limitations as a bar; 3. A contract entered into January 19, 1888, between the defendant, G. W. Sidle, then the owner of the south half of the north half of said lots, and G. M. Saltzgaber, then the owner of

---

* Error not prosecuted.

the north half of the south half of said lots Nos. 63 and 64, whereby it was agreed that in erecting a brick buiding, then about to be erected by Sidle on his said premises, the south wall thereof, which was to be twelve inches in width, should be constructed on the line between said lots, so that the half thereof should rest upon the premises of said Saltzgaber, and that the said Saltzgaber, his heirs and assigns, should have the privilege of using said wall upon the payment of the reasonable value of the same; that thereupon, said Sidle constructed a two-story brick building with the south wall thereof, a twelve inch brick wall, on and along the line between the lands so possessed by the said Saltzgaber and the said lands of the defendant, Sidle, with six inches thereof resting and standing upon the lands so possessed by said Saltzgaber; that the premises then possessed by Saltzgaber were by mesne conveyances transferred and conveyed to the plaintiffs herein; that the defendant, Anna Sidle, acquired and holds title from and through the defendant G. W. Sidle; that since said time defendants have maintained said party wall so constructed, and that such possession and occupancy by said wall has been open, visible, notorious and continuous, and that plaintiffs have had at all times full notice and knowledge thereof.

The reply denies the averments of the answer. By agreement a jury was waived and case submitted to the court.

For the purpose of establishing the boundary line between the north half and the south half of said lots Nos. 63 and 64, the plaintiffs' measure from the corner of an iron column in what is known as the Kauke building, at the corner of Main and Washington streets. The measurements made by the surveyors, Giffin, Beatty and Ballard, using that iron column as a starting point show that the south line of the defendants' brick building is twenty-one inches south of the middle line of said lots Nos. 63 and 64.

It is conceded that the iron column referred to is not an original monument, nor is it the perpetuation of an original monument. The original monument of the plat of Van Wert was located at the southeast corner of the public square, which the record informs us was 132 feet by 148½ feet, being the lots upon which the court house now stands, "At the southeast

corner thereof," the record reads, "is planted a white stone about four by ten inches for making future surveys from." This original plat was made in 1835. In lots Nos. 63 and 64 were part of the original plat, as was also in-lot 25 upon which the Kauke Building was constructed in the year 1861. It appears from the evidence that the original monument above referred to was then standing at the southeast corner of the court yard, but when it disappeared we are not informed.

It appears that for some years the Kauke corner has been used by surveyors as a starting point for surveys and measurements, although there is no evidence that such corner was so located and established by reference to the original monument. The first, and in fact the only, record showing the use of the iron column at the Kauke corner as a monument for surveys, is the record of the Frisbie Addition, surveyed and platted in 1873, where it is said that—

"The starting point from which this addition was surveyed and laid out and with which it corresponds, is on the north line of Main street and east line of Walnut street, at the southwest corner of lot 35 in the original plat of said town of Van Wert, which point is recognized as a point to make surveys from in said original plat and in accordance with the survey of this addition. Said southwest corner of said lot 35 is situated 60 rods, 2 feet and 6½ inches east of the southwest corner of the base of the iron column in the southwest corner of the brick building erected on lot No. 25 in said original plat."

We agree with the suggestion made that the fact that the Kauke corner was established and said building erected while the original monument still remained gives rise to a presumption that such corner was located with reference to said original monument, and we find authorities to support this view, from some of which we shall quote further along. It should be observed, however, as we go along, that all that is said upon the subject by the authorities to which we shall refer, is as well applicable to the contention which the defendants make that a similar presumption favors the location of the line claimed by them, for it appears from the undisputed evidence that prior to 1865, a board and post fence extended east and west on a line between the north half and south half of said lots, and

that upon the line of such fence the former as well as the present building was constructed.

In the 69th Mich., 333, it is said:

"Ancient fences used by a surveyor in attempting to reproduce an old survey are strong evidence of the location of the original lines, and if they have stood for twenty or thirty years, should be taken as indicating that such lines as against evidence of a survey ignoring such fences, and assuming a starting point at a certain street because agreed upon by surveyors as the true line.

"It will not do to permit boundaries to be disturbed and moved upon a survey made from an assumed starting point, without some proof of its being a true line located and fixed by the original survey and upon which parties may have acted and made valuable improvements.

"In the absence of original monuments, evidence is admissible of the location of lots and blocks, and lines and corners of lots and blocks thereby established as indicated by old fences, old buildings and the streets as laid out and used for many years, and stakes and monuments established by former surveyors." 97 Wis., 399.   See, also, 39 Mich., 601; 102 Mich., 417; 31 Mich., 270; 49 Mich., 59; 85 Wis., 80; 115 Wis., 1; 80 N. W., 115; 96 Wis., 346.

While we do not find it necessary to decide the question as to whether the monument at the Kauke corner has such a presumption in its favor as to warrant its use as a starting point for surveys in the city of Van Wert, because of other questions appearing in this case, yet we have attempted to go into the question for the reason that it has been a rather mooted one. The same question has appeared in other controversies which have found their way into this court, and I think, invariably the matter was left undecided and unsettled.  All the authorities agree that under circumstances such as presented in this case, it is the duty of the surveyor not to determine the location of lots or lot lines by an absolutely accurate survey; that the question is not how an accurate survey would locate them, but how the original stakes located them.  No rule is more inflexible in real estate matters than that monuments control course and distance.  Justice Cooley, in 39 Mich., 601, above cited, says:

"The city surveyor should, therefore, have directed his attention to the ascertainment of the actual location of the

original landmarks, and if those were discovered they must govern. If they are no longer discoverable the question is where were they located, and upon that question the best possible evidence is usually to be found in the practical location of the lines *made at a time when the original monuments were presumably in existence and probably known.*"

But it is also said by the same eminent justice:

"As between old boundary fences and a survey made after the monuments have disappeared, the fences are by far the better evidence of what the lines of the lot actually are."

It will be seen that the rule thus clearly stated under the evidence appearing in this case, probably justifies the use of the Kauke corner as a monument from which to make measurements and surveys; but if measurements made from that corner, from that monument, conflict with the lines of lots also in the original plat of the town fixed and established at about the same time, and fences constructed to mark such lines, why should the one have preference? The same evidence which shows that said. original monument remained in its place at the corner of the court yard after the Kauke corner was located, shows also that it was there after the time when, according to positive evidence, the fence marking the disputed boundary was located and constructed. It appears, further, that a stake was planted at the last named location at the west end of said fence, which stake was pointed out to Mr. Sidle at or prior to the time of his purchase of said premises. The fence was constructed some time prior to 1865, and was maintained until 1883, or rather a part of it, possibly half across the lots, frame buildings having been placed upon the north lot, which belonged to Longsworth, and extended to the line of said fence. In 1865 and for some years thereafter, the north half of said lots belonged to Longsworth and the south half to Clark. From 1865 until 1873, Longsworth lived on his part of said lots, and said fence extended, we are told by Mrs. Longsworth, across the lots dividing their portion from that of Mr. Clark. Just when any portion of said fence was removed or was destroyed, and said buildings placed on the Longsworth lot is not disclosed. We find them there in 1882. The following year said premises, that is, the south third of the north half of said lots, was purchased by defendant, G. W.

Sidle, from Longsworth. At that time two small frame buildings occupied the front of said premises and extended to the disputed line, possibly beyond. At some time prior to that a brick building had been erected upon the middle third of the north half of said lots. This is known as the Alexander lot. In 1883, Sidle caused to be constructed a frame building in the rear of his south room. This room was from twenty-five to twenty-nine feet in length, the old room in front of it being probably fifteen feet east and west. At the time said room was erected it was so located that the south wall thereof, was twenty-four feet south of the Alexander Building and in line with the remainder of said fence. It further appears that in the rear of the Sidle lot, possibly ten or twelve feet from the east end thereof, stood an ice house which was also on a line with said fence and from which the fence extended east some distance. Thus according to the evidence, was the Sidle lot occupied and used until the year 1888, when the frame buildings, except the ice house, were removed to make place for the brick business building which now stands on said lot, eighty feet east and west. It appears from the evidence, that the stake before referred to, was found in 1888 when the excavation was made for the south wall of the brick building and that it stood twenty-four feet south of the Alexander building.

Thus it appears that the line claimed by Sidle and his predecessor in title as the line between the north half and the south half of said lots was the line of the old fence—twenty-four feet south of the Alexander building—and that such line was claimed together with some occupancy or visible sign of such claim from 1865 until the present time. The measurements made by the surveyors and shown upon the plat introduced in evidence by the plaintiffs, rather supports the defendants in this contention that such has been claimed and considered to be the true line, if not acquiesced in. This plat shows that, whereas the original plat of Van Wert indicates that the lot on the corner of Main and Washington streets is but 132 feet, its south line as built upon and occupied is .85 of a foot further south. It further shows that the alley is but .05 of a foot short of its platted width; that the building next to the alley occupies .66 of a foot more than its twenty-two feet, while the Alexander building oc-

cupies but 20.17 feet.  It appears from the evidence, that when the Alexander building was erected a strip two feet wide was left on the south side thereof for the purpose of a joint stairway, further appears that such arrangement was carried out, and that a joint stairway was constructed when the Sidle building was erected by which access is had to the second floor of the Alexander as well as the Sidle building, there being a front as well as rear stairway and a hall the full width of four feet the entire length of the buildings east and west on the second floor. If we take this fact into consideration, and we think it must be considered, then we find that this 1.83 feet, which it is said is the distance the Sidle building is too far south, is exactly the extra space used and occupied by buildings north of the Sidle building.  For the purpose of showing this more fully, let us take first the distance as shown by the original plat of Van Wert, commencing at the Kauke corner.

Platted distances.

| | |
|---|---:|
| Main street | 82.50 |
| In-Lot No. 54 | 132.85 |
| Alley | 16.5 |
| North Half of 63 and 64 | 66. |

Measurements of lots as occupied.

| | |
|---|---:|
| Main street | 82.40 |
| In-Lot No. 54 | 132.85 |
| Alley | 16.45 |
| First building on 63 and 64 | 22.66 |
| Alexander building | 20.17 |
| From Alexander wall to south line *Sidle* bldg | 24.30 |
| | 298.83 |
| | 297.00 |
| | 1.83 |

I have said that these measurements serve to support the contention of the defendants that the line has been claimed and maintained where the south line of their building now stands, or rather six inches north thereof.  Let us note the fact that although lot 54 takes .85 of a foot (or 10.2 inches) more than the original plat gives it, yet the alley next south loses but .05 of a foot (.3 of an inch); thus it is seen that the alley

line according to this measurement would be practically ten inches further south that is should be according to the original plat. We are not enlightened by the evidence adduced as to the time of occupancy of said lot 54 or when the building was erected thereon, or when the building was erected next south of the alley, nor the one on the Alexander lot. We only know that the Alexander building was erected btfore the Sidle building. But from the evidence before us we think we may presume that the lot fronting upon Main street was built upon first, and lots near thereto before those further away, and that as this was done lines were established, fences erected thereon, and later buildings erected in accordance with such lines. If then a mistake was made in the measurement of lots next to Main street, giving them more than they were entitled to according to the original plat, does it not seem quite probable that the line between these lots was established when and where calimed by the defendants? According to the measurements above stated the Alexander building and the Sidle building together occupy just .03 of a foot less than the 44 feet to which they are entitled.

If the extra space given lots next to Main street was not the result of mistake in measurement but rather of appropriation by the owners of the lots, then does it not still seem quite probable that owners of lots should locate their property lines by measurements from lines heretofore established and marked? This especially in view of the fact that the monuments from which such measurements would be made were north of said lots. We think such presumptions may be indulged and such conclusions rationally drawn from the evidence.

This brings us back to the rule laid down by Justice Cooley, which we find is adopted and followed by other authorities cited:

"As between old boundary fences and a survey made after the monuments have disappeared, the fences are by far the better evidence of what the lines of the lot actually are."

As supporting our conclusions in this regard we also refer to 96 Wis., 346, where it is said:

"The presumption that a fence which has stood for thirty years is located on the line of the original survey is not overcome

by the fact that upon a resurvey based upon no original monument another line is established.''

Also,

''A boundary line long recognized and acquiesced in is generally better evidence of the real line than any survey made after the original monuments have disappeared.'' 28 Kan., 665; 102 Mich., 417.

This brings us to the claim of adverse possession, and we are of opinion that such defense is well asserted and established in this case, even if the line in dispute be located according to the survey now made. The facts show that the line established and claimed from 1865, was 24 feet south of the Alexander wall. Defendants and their immediate grantor had held possession to that line from 1865, so that such title ripened in 1886, prior to the removal of any buildings from the Sidle lot. But it is contended that the evidence does not show that Sidle's Buildings and fence extended the entire length of the line, and, that therefore, there was not the hostile and exclusive possession required to result in a bar by the statute of limitations.

It is a rule generally recognized that one in possession can acquire title by adverse possession only of the land actually inclosed and occupied by him unless he have color of title, but that if a man enter a tract of land and under deed duly recorded, although from one having no legal title, and has a visible occupation only of part of it, the true owner is disseized of the whole tract. Said in *Humphreys* v. *Huffman,* 33 O. S., 404, that:

''The ground upon which the doctrine of constructive possession is based is, that one in possession, claiming by metes and bounds under a paper title, and openly and notoriously exercising control and dominion on the land, is presumed to be doing so to the extent of his claim. * * * the occupancy must be such as to give notice to the real owner of the extent of the adverse claim.''

This is undoubtedly the correct rule to apply in the case at bar. Defendants' deed calls for the south third of the north half of the said lots. Under this deed they have claimed their south line to be twenty-four feet south of the Alexander wall and extending east and west. The description, together with

the plat, shows that wherever the disputed line is, it is a line due east and west without curves or jogs, and hence occupancy to the line claimed both in front and rear was such occupancy as to give notice to the owners of the south half of lot that the adverse claim extended entirely across the lots.

"The principle upon which the limitation operates is that the adverse claim is accompanied by such an invasion of the rights of the opposite party as to give him a cause of action, which he has failed to prosecute within the time limited by law, and which he, therefore, is presumed to have surrendered or abandoned." *Clark* v. *Potter*, 32 .O. S., 63; Angell on Limitations, 390.

We think this view is not inconsistent with any reported Ohio case, and we find it supported by the Supreme Court of Iowa in the case of *O'Callaghan* v. *Whisenand*, 93 N. W., 579 (119 Iowa, 566) a comparatively recent case, having been decided in 1903.

Owners of adjoining business lots in the city of Des Moines joined issue as to the location of their boundary line, the difficulty having grown out of conflicting surveys. Defendant's grantor, in 1873, erected a business building upon this lot, locating his wall according to a survey then made. In 1890, plaintiff came to erect a new building on his lot, employed an engineer, who upon survey determined that defendant's building was over the line, whereupon action was brought. We quote from the text of the decision:

"If he (plaintiff) intended to question the correctness of the location of the line, he should have acted within ten years after he knew that defendant was claiming and exercising the right of possession to that line, even though the original occupancy on the part of the defendant's grantor was by mistake, yet from the time that he definitely fixed upon this line as his boundary line, and asserted the right to possession with reference thereto, his occupancy was up to that particular line, and not up to some imaginary line, which might afterwards, by survey, be established as the correct line according to the original survey and plat. In other words, his possession was not from that time on, by reason of any mistake, but by reason of the contention that that was his boundary.

"It is further contended by plaintiff, however, that the permanent building erected by Bird (defendant's grantor), on what he believed to be his eastern boundary line, did not ex-

tend the entire length of the boundary, and that as to the line beyond the building there has been so much adverse possession or acquiesence as to conclude the plaintiff. We see no merit in this controversy. It is clear that the boundary line was supposed to be a straight line, and that it was established by the wall of the permanent building as effectually as though the building had extended the entire length of the line. There is no contention that there should be any jog or off-set in the boundary between the two lots. When Bird's building was constructed on the boundary line as he claimed it to be for a considerable distance, he was asserting right of possession to that straight line as effectually as though his building had covered the entire depth of his lot.''

In the case before us, to repeat some of the evidence, it appears that the line claimed by the defendants was for many years marked by a fence extending across the lots and that a part of the fence remained for more than twenty-one years, marking the line claimed and along which the frame, and afterward the brick building, was located. The occupancy was such as to give notice of the extent of the adverse claim.

But it is urged that in 1888 Sidle and Saltzgaber entered into a contract whereby it was agreed that the south wall of the Sidle building was to be so located that it would extend but six inches south of the middle line of said lots, and that any rights theretofore acquired by Sidle were thereby surrendered. This contention is met by the rule that the location of the line is to be determined by the fence and stake referred to, rather than by measurements made now from a point other than the original monument. Upon this point in addition to authorities previously cited, we call attention to 92 N. W., 704, where it is said:

''The fact of possession becomes of importance when the fact is considered that none of the original monuments, if any, marking the location of the block or street in dispute, has been preserved; and that no living witness is able to identify the place where such monuments were platted. * * * there attaches to lines so long recognized a presumption of correctness, which if not conclusive, is to be overcome only by clear and satisfactory proof.''

It is clear that Sidle then considered the boundary line referred to in said contract to be as he had theretofore, and has

since claimed to be, and where title has become perfect by adverse possession for the statutory period, it is not lost by an admission by the holder that the possession was not adverse, although the admission be in writing, or by an agreement to join in a survey. Cyc., Vol. 1, p. 1139; 103 Mich., 501; 52 Am. Dec., 618; 86 Am. Dec., 703.

Even if the adverse possession had not continued for twenty-one years, prior to 1888, which we think clearly it had, still the temporary vacancy when moving off the old and erecting new buildings would not constitute an interruption of possession, when there was no intention to abandon possession. Cyc., 1, 1021; 32 O. S., 65.

The conclusions reached and above announced, we believe to be in complete harmony with the latest reported decision of the Supreme Court of this state upon the subject of adverse possession, that of *McAllister* v. *Hartzell*, 60 O. S., 69.

Upon the issues joined we, therefore, find for the defendants and dismiss the petition herein, and assess the costs to the plaintiffs.

*Dailey & Allen*, for plaintiffs.

*T. J. Trippy* and *W. F. Corbet*, for defendants. ·