JAMES O. CHAMBERS, Appellant, *v.* FREDA L. GOUGH *et al.,* Appellees.

(No. 71-88; ▮▮▮▮▮▮▮▮

Second District—January 19, 1972.

*Rehearing denied March 20, 1972.*

Yalden, Riding & Remencius, of Rockford, for appellant.

Philip A. Nicolosi and Sam J. Cannariato, both of Rockford, for appellees.

Mr. JUSTICE GUILD delivered the opinion of the court:

This matter came on for trial upon the amended complaint of the plaintiffs James O. Chambers and Joretta A. Chambers, his wife; which contended that the defendants, their neighbors to the west, and the City of Belvidere had entered upon the westerly 14 feet of the plaintiffs' property and had withheld possession of said premises to the damage of the plaintiffs in the sum of $3,000.

The matter was heard without a jury upon the answer of the individual defendants and the city of Belvidere, and a verdict was rendered in favor of the defendants and against the plaintiff, James Chambers. The record does not disclose what happened to Joretta A. Chambers, the wife and joint tenant of the plaintiff, and no order was entered as to her.

The basic issue in this case is the proper location of the plaintiffs property, *i.e.*, Lots 11 and 12 in Block 4 of West Park Addition to the City of Belvidere. The question at issue is best illustrated by examination of the following plat:

PLAT MAP

This subdivision was originally platted in April, 1910, and the plat of survey was filed by the county surveyor on August 30, 1910. It would then appear that various stakes or monuments were placed on the corners delineating the lots, particularly in blocks 1, 2, 3, 4, 5 and 6 of this subdivision. These stakes or monuments did not in fact coincide with the plat of survey. Various lots were sold by reference to lot and block number. Occupancy of the various lots over the years was based upon the stakes or monuments which as indicated above did not coincide with the plat of survey.

Commencing at the north boundaries of blocks 1 and 2 the survey, the monuments and the occupancy at that point are correct. As the lines proceed southward however, the north and south lines as delineated by the monuments or stakes and as occupied, run in a southeasterly direction away from the plat of survey lines so that when these lines reach the plaintiffs' property and that of his westerly neighbors, the north and south line of occupancy is approximately 14 feet to the east of the plat of survey line.

The properties in question are located between Seventh and Eighth Avenue. The plaintiffs' lots described by the plat of survey are 127 feet in width. The defendant Eklund's lot is 127 feet in width. The defendant Gough's lot is 127 feet in width. And between the plaintiff and defendant lots there is an unused 10 foot alley. For this reason the City of Belvidere was made a party defendant. The distance between the easterly line of Seventh Avenue and the westerly line of Eighth Avenue is 396 feet; Seventh and Eighth Avenues are 66 feet in width. As indicated the east-west dimension of plaintiff and defendants' lot is 127 feet each and if we add the 10 foot alley we have a distance between the easterly line of Seventh and the westerly line of Eighth Avenue of 396 feet. Those 396 feet are there.

The question before this court is whether or not we recognize the occupancy use of the property or whether we recognize the original plat of survey. The plaintiff knew of this discrepancy between the occupancy and monument lines and the plat of survey at the time he occupied the property. By this suit the plaintiff would acquire no additional property nor would the defendants lose any property. The sole question before the court is where is the plaintiffs' property and where is the defendants' property.

Many exhibits were introduced at the trial starting with the original 1910 plat of survey. A surveyor by the name of Duane F. Lillie was employed by the plaintiff to survey his two lots when he purchased his property in 1963. This exhibit disclosed the discrepancy in question. The location of the house on the premises is not affected in any way by the

present suit. Both the plaintiff and the defendants have attempted to occupy the unused alley and the additional few feet separating their respective premises. As a matter of fact, the actions of the defendants are somewhat reprehensible in that they took it upon themselves to tear down a dog house the plaintiff had built and placed the debris on his porch.

■■ The surveyor Lillie testified at great length as to the survey he made and the error which he found which is admitted by all parties concerned. At the conclusion of the evidence the trial court found in favor of the defendants and against the plaintiff.

Plaintiff contends that the surveyor Lillie should have been allowed to testify as to his opinion whether or not some stakes which he found were the stakes placed there by the original surveyor. This the court refused to allow. It is to be noted that the original surveyor on his plat of survey failed to indicate what type of stakes or monuments he used in this subdivision. The witness Lillie testified that in his examination of this subdivision and the subdivision immediately contiguous which was also surveyed and platted within a few days time of the subdivision in question in 1910, and that from examination of the monuments or stakes he found iron pipes, five-eighths inch iron pins, one and one-quarter inch iron pins, one and one-quarter inch iron pipes, and one-half inch iron pins. In this court's opinion the trial court was quite correct in refusing to allow this surveyor to indicate what type of pin he would guess or surmise had been used in the plat or original survey. It would be solely a matter of speculation in view of the variety of pins used in and around this subdivision which the surveyor Lillie found.

■■ As indicated above, the trial court found that over a period of years since 1910 the property had been used and occupied by the City of Belvidere and the parties to this lawsuit and the other residents in blocks 1, 2, 3, 4, 5 and 6. Buildings, fence lines and streets were constructed in accordance with the present occupancy and the plaintiff acquired, as the trial court stated, "that which he bargained to receive in accord with the recorded plat as laid out and staked in 1910 by the then owner of all the land." While this court is not in complete accord with the wording of that finding by the court, nonetheless it appears that the plaintiff acquired all that he bargained for as far as area was concerned, the sole question being that the property was located approximately 14 feet to the east on its southerly boundary on a dimension line running northward. In addition to this the relief requested by the complaint of the plaintiff is obscure. His complaint is captioned "at law" and his prayer for relief asks for "judgment against the defendants for the possession of said premises for the sum of $3,000." However, no

element of damage was proven by the plaintiff except that his "dog pen" was destroyed without any testimony as to the value in place or cost of replacing.

We do not believe that the finding of the court is contrary to the manifest weight of the evidence, nro do we feel that we should substitute our judgment for that of the trial court. The cases cited by counsel for both sides are not in point on the question of damages. For that reason the judgment of the trial court is affirmed.

Judgment affirmed.

MORAN and ABRAHAMSON, JJ., concur.

## SUPPLEMENTAL OPINION ON DENIAL OF REHEARING

Mr. JUSTICE GUILD delivered the opinion of the court:

The plaintiff has filed a petition for rehearing stating that the court has overlooked or misapprehended a portion of the evidence. It is true that the statement of this court that the plaintiff "knew of this discrepancy between the occupancy and monument lines and the plat of survey at the time he purchased the property" is incorrect. The record does not disclose this specifically but the plaintiff in fact knew of the discrepancy prior to the time he occupied the property. This does not alter our decision.

The plaintiff further contends that had the surveyor been allowed to testify he could have specifically stated what pins were used in the original survey. The surveyor testified with reference to a xerox copy of a drawing of the subdivision here in question. He did not know where the original came from. In response to a question as to what kind of pins he found in West Park Subdivision he stated "I found a variety of pins." He then went on to say that he found ½ inch pins and ⅝ inch diameter pins that were solid. He also found iron pipes. He then stated that the original plat did not disclose what sort of pins were used. Later he testified that in the two adjacent subdivisions the surveyor stated on the original survey he used 1¼ inch iron pipes.

■■ Counsel in contending that the surveyor should have been allowed to testify that the pins he found in West Park Addition were the original pins, cites Illinois Evidence Manual, Gard, 5th Ed. (1963) page 271 as authority, *viz*. "Surveyors may give their opinions on * * * genuineness of alleged survey monuments * * *" With this statement this court has no disagreement providing a proper foundation is laid. It is readily apparent from an examination of the surveyor's testimony, set out in part above, that as we have said before the testimony of the

surveyor with regard to whether the pins he found were the original pins, would be at best a guess or a surmise.

The situation in the instant case is quite analogous factually to *Westgate v. Ohlmacher* (1911) 251 Ill. 538, 96 N.E. 518 involving a ten inch strip of land in Sycamore. In that case the Supreme Court cited Mr. Justice Cooley in *Diehl v. Zanger*, 39 Mich. 601, stating:

" '* * * Nothing is better understood than that few of our early plats will stand the test of a careful and accurate survey without disclosing errors. This is as true of the government surveys as of any others, and, if all the lines were now subject to correction on new surveys, the confusion of lines and titles that would follow would cause consternation in many communities. Indeed, the mischiefs that must follow would be simply incalculable, and the visitation of the surveyor might well be set down as a great public calamity.' "

As the court said in *Westgate* we too think the statements of Judge Cooley are applicable to the case at bar.

The petition for rehearing is denied.

MORAN, P. J., and ABRAHAMSON, J., concur.