*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JACK T. FIKE and CRAIG FIKE,

        Plaintiffs/Counterdefendants-
        Appellees,

v

DONALD F. OTTOBRE, SR.,

        Defendant/Counterplaintiff-Appellant.

UNPUBLISHED
December 15, 2022

No. 359892
Mecosta Circuit Court
LC No. 2019-025061-CH

Before: GLEICHER, C.J., and MARKEY and RICK, JJ.

PER CURIAM.

Defendant and counterplaintiff, Donald F. Ottobre, Sr., appeals by right the trial court's orders granting summary disposition in favor of plaintiffs and counterdefendants, Jack T. Fike and Craig Fike, and denying Ottobre's two motions for reconsideration. This case involves competing land surveys associated with a boundary dispute between the parties. We affirm.

The parcels in question are located in Green Township in section 36 in the top half of the southwest quarter section. Ottobre's parcel is in the northwest quarter of that quarter section, and the Fikes's lot is situated in the northeast quarter of that quarter section. The Fikes commissioned a survey by LCM Surveying & Engineering, Inc. (LCM), in March 2018, and Ottobre commissioned a survey by Mid-Michigan Engineering and Surveying Co., Inc. (MME), in June 2018. The LCM and MME surveys were, ultimately, very close in regard to drawing or identifying the common boundary line between the two parcels. LCM had at first positioned the boundary line in a different location by using certain mathematical calculations, but it later adjusted its survey conclusions after realizing that MME, in 2006, had relied on historical monuments to establish a key corner—the "L-12" corner or the central corner of section 36. Ottobre, meanwhile, refused to accept the results of the 2018 MME survey and commissioned another survey by Thomas H. Sage, who used mathematical calculations and described a boundary line similar to that initially identified by LCM, before LCM made its adjustment. The trial court concluded that the adjusted survey by LCM established the true and proper boundary line because it was based on historical monuments. The court granted summary disposition in favor of the Fikes, and it denied a couple of motions for reconsideration filed by Ottobre, who now appeals by right.

-1-

This Court reviews de novo a trial court's ruling on a motion for summary disposition. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019).[1] "We review a trial court's decision on a motion for reconsideration for an abuse of discretion." *Frankenmuth Ins Co v Poll*, 311 Mich App 442, 445; 875 NW2d 250 (2015).

Ottobre contends on appeal that the trial court erroneously determined that the boundary line ultimately described by LCM was based on historical monuments. Significantly, Ottobre does not dispute that monuments control in survey disputes. But he contends that the Fikes's favored survey did not actually rely on monuments. We initially note that a "monument" is statutorily defined as "a marker that occupies the position of a corner and that possesses or is made to possess a magnetic field." MCL 54.202(f). And a "corner" is defined as "an original public land survey

---

[1] The Fikes moved for summary disposition under MCR 2.116(C)(9) and (10), but it is clear that the trial court, which relied on documentary evidence including the surveys in rendering its decision, solely applied MCR 2.116(C)(10). MCR 2.116(C)(10) provides that summary disposition is appropriate when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." A motion brought pursuant to MCR 2.116(C)(10) tests the factual support for a party's action. *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013). "Affidavits, depositions, admissions, or other documentary evidence in support of the grounds asserted in the motion are required . . . when judgment is sought based on subrule (C)(10)," MCR 2.116(G)(3)(b), and such evidence, along with the pleadings, must be considered by the court when ruling on the (C)(10) motion, MCR 2.116(G)(5). "When a motion under subrule (C)(10) is made and supported . . ., an adverse party may not rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial." MCR 2.116(G)(4). "A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the pleadings, affidavits, and other documentary evidence, when viewed in a light most favorable to the nonmovant, show that there is no genuine issue with respect to any material fact." *Pioneer State*, 301 Mich App at 377. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10). *Pioneer State*, 301 Mich App at 377. "Like the trial court's inquiry, when an appellate court reviews a motion for summary disposition, it makes all legitimate inferences in favor of the nonmoving party." *Skinner v Square D Co*, 445 Mich 153, 162; 516 NW2d 475 (1994). "[S]peculation is insufficient to create an issue of fact." *MEEMIC Ins Co v DTE Energy Co*, 292 Mich App 278, 282; 807 NW2d 407 (2011). A court may only consider substantively admissible evidence actually proffered by the parties when ruling on the motion. *Maiden v Rozwood*, 461 Mich 109, 121; 597 NW2d 817 (1999); see also MCR 2.116(G)(6).

corner, a protracted public land survey corner, a property controlling corner, a witness monument, or a property corner." MCL 54.202(b).

In *Poch v Urlaub*, 357 Mich 261, 272; 98 NW2d 509 (1959), the Court, quoting *Diehl v Zanger*, 39 Mich 601, 605 (1878) (COOLEY, J., concurring), stated:

> "Nothing is better understood than that few of our early plats will stand the test of a careful and accurate survey without disclosing errors. This is as true of the government surveys as of any others, and if all the lines were now subject to correction on new surveys, the confusion of lines and titles that would follow would cause consternation in many communities. Indeed the mischiefs that must follow would be simply incalculable, and the visitation of the surveyor might well be set down as a great public calamity."

In *Diehl*, Justice Cooley additionally stated that "[t]he question [for determining the location of the parcels at issue in the case] is not how an entirely accurate survey would locate these lots, but how the original stakes located them." *Diehl*, 39 Mich at 605 (COOLEY, J., concurring); see also *Jonkers v Summit Twp*, 278 Mich App 263, 267-268; 747 NW2d 901 (2008) (quoting with approval this statement by Justice Cooley).

The *Jonkers* panel referred to *Adams v Hoover*, 196 Mich App 646; 493 NW2d 280 (1992), stating that the Court in *Adams* "relied on the law as set forth by Justice Cooley more than 100 years ago, *which is still the law today*[.]" *Jonkers*, 278 Mich App at 267 (emphasis added). In *Adams*, 196 Mich App at 652-653, the Court quoted with approval more of Justice Cooley's opinion in *Diehl*:

> As stated by Justice Cooley in *Diehl*[, 39 Mich at 605 (COOLEY, J., concurring)]:
>
> > "[N]o rule in real estate law is more inflexible than that monuments control course and distance[]—a rule that we have frequent occasion to apply in the case of public surveys, where its propriety, justice and necessity are never questioned. But its application in other cases is quite as proper, and quite as necessary to the protection of substantial rights. The city surveyor should, therefore, have directed his attention to the ascertainment of the actual location of the original landmarks and if those were discovered they must govern." [Ellipses and emphasis omitted.]

The *Adams* panel also observed:

> Moreover, in relocating lost monuments the question is not how an entirely accurate survey would have located the lots, but how the original survey stakes located them. The rationale behind this proposition is primarily the public's need for finality and uniformity of boundaries and land titles. [*Adams*, 196 Mich App at 652 (citations omitted).]

And the Court in *Jonkers* referred to additional language from *Diehl*:

> "If [original monuments] are no longer discoverable, the question is where they were located; and upon that question the best possible evidence is usually to be found in the practical location of the lines, made at a time when the original monuments were presumably in existence and probably well known. As between old boundary fences, and any survey made after the monuments have disappeared, the fences are by far the better evidence of what the lines of a lot actually are, and it would have been surprising if the jury in this case, if left to their own judgment, had not so regarded them." [*Jonkers*, 278 Mich App at 268, quoting *Diehl*, 39 Mich 601, 605-606 (COOLEY, J., concurring) (ellipses omitted).]

In an MME survey undertaken in February 2006 and prepared for Mike Paul—who owns property in the western one-half of the southeast quarter of section 36 and is, therefore, the Fikes's neighbor to the east—the surveyor, Gerald J. Gray, mentioned finding a rod and pieces of crockery at an ancient three-way fence corner; the location mentioned corresponds with the "L-11" corner in section 36. This corner is situated in the middle of the northern border of section 36. The key L-12 corner (the center corner of section 36 and the northeast corner of the Fikes's parcel) is nearly directly to the south of the L-11 corner.

Gray filed a Land Corner Recordation Certificate (LCRC) in connection with the 2006 survey. He indicated in the LCRC that the General Land Office (GLO) surveyor had "set post" for the L-11 corner and that he (Gray), in connection with the L-11 corner, found a rod and pieces of crockery at an ancient three-way fence corner. Gray also stated, with regard to the L-12 corner, that county surveyor Lyman June had found an old stake in 1896 and 1897 and that Gray "accepted the found ancient 3-way fence corner as the perpetuation of the corner location found by LW June in 1896 & 1897." Gray indicated that he set a bar at the location and stated that there were old fence lines to the west, south, and east. Surveyor Sage admitted that MME/Gray, in 2006, had set an iron labeled 17741 at the L-12 corner. In addition, the MME survey *prepared for Ottobre* noted the center corner as corresponding with a recording at Liber 2, page 293, and corresponding with an iron labeled 17741. The ultimate LCM survey relied on by the Fikes showed that the center corner accords with a fence running southward and notes the center corner as corresponding with a recording at Liber 2, page 293. All of this evidence demonstrated that the LCM survey relied on by the Fikes was, in fact, based on historical monuments. Indeed, Gray relied on monuments consistent with a GLO survey for corner L-11[2] and at the same time located corner L-12; the L-12 location clearly corresponded with the one-half mile distance existing between corners. In

---

[2] An LCRC by Brent C. Clough was introduced in connection with the motion for reconsideration and provided additional support for the monumentation of the L-11 corner. Ottobre alleges on appeal that the Clough and Gray LCRCs are "competing," but does not explain this assertion. As stated in *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998):

> It is not sufficient for a party simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position. [Quotation marks and citation omitted.]

addition, and significantly, Gray indicated that the L-12 corner had been monumented with an old stake found by Lyman June.

Sage stated in his LCRC that he was rejecting the MME/LCM L-12 corner location for the following reason:

> It is my Professional Opinion that a surveyor does not have the judicial authority nor is it his duty to assist land owners [sic] to perfect their unwritten property rights into title rights by establishing a protracted government corner position that merely fits occupation between two land owners [sic] that have large tracts of land that are described by fractional descriptions[.]

MCL 54.202(k)(*i*) provides that a "[p]rotated public land survey corner" includes "a center quarter section position that was not actually monumented on the ground in the field notes of the original federal government survey, but that serves to complete the nominal half-mile grid of government corners."[3] It is unclear exactly why Sage was rejecting the MME/LCM L-12 corner location; presumably, he believed that the original survey establishing the L-12 corner was incorrect. The L-11 corner was monumented by a GLO survey, and the L-12 corner is positioned in relation to this corner. The location of the L-12 corner was also based on an historical stake found and accepted by Lyman June. Although Lyman June was a county surveyor and not a GLO surveyor, corners monumented and recorded by county officials are also to be given deference, even if later surveying techniques show them to be technically inaccurate. See *Adams*, 196 Mich App at 648-649, 651-653. Sage's LCRC provides no creditable or logical reasoning or evidence for rejecting the establishment of the L-12 corner.

Ottobre contends that the survey and boundary issues need to be submitted to the trier of fact for resolution. He places particular emphasis on the statement in *Stewart v Carleton*, 31 Mich 270, 273 (1875), that "[w]here a section line or other starting point actually exists, is always a question of fact, and not of theory, and cannot be left to the opinion of an expert for final decision." The *Stewart* Court went on to state, "The freaks of opinionated surveyors have led to much needless and vexatious litigation and disturbance, and it is much to be desired that they should be confined to their legitimate place as witnesses on fact, and not on opinions, which lie beyond the domain of science." *Id*. at 273-274. Ottobre argues that "the issues presented to the lower [c]ourt could not be both a question of fact and also present no genuine issue of material fact."

We conclude that the trial court had to answer the underlying legal question whether surveys relying on historical monuments take precedence over those that do not, and the court made its determination in favor of the former, which decision is consistent with the caselaw. Therefore, in order to create a genuine issue of material fact for purposes of MCR 2.116(C)(10), Ottobre needed to submit documentary evidence of a survey that relied on monuments and that contradicted the Fikes's monument-based survey. He failed to do so. Or, Ottobre could present

---

[3] In *Adams*, 196 Mich App at 648, the Court stated, "As was the custom, the General Land Office did not monument a center quarter corner. This task was traditionally left for subsequent surveyors."

evidence or argument that the Fikes's survey did not actually rely on monuments, which argument he did and does make, and we have rejected. Ottobre's general contention that boundary line disputes cannot be resolved by summary disposition is nonsensical and reflects a complete lack of understanding with respect to (C)(10) motions. We thus hold that the trial court did not err by ruling that there was no genuine issue of material fact that the location of the boundary line was controlled by the Fikes's survey—LCM's adjusted survey—as a matter of law. With respect to Ottobre's additional argument that not only a trial, but specifically a *jury* trial, was required is now moot. Moreover, it had also been waived when defense counsel *agreed* in a scheduling order that any trial would be a bench trial.

Ottobre also argues that an MME surveyor's report mentioned in an affidavit by William Sikkema, the LCM surveyor who adjusted the survey outcome, should not have been considered by the court because it did not contain the name of its creator, was hearsay, and had not been authenticated. Ottobre did not raise this evidentiary argument until it moved for reconsideration. "As a general rule, an issue is not preserved if it is raised for the first time in a motion for reconsideration in the trial court." *George v Allstate Ins Co*, 329 Mich App 448, 454; 942 NW2d 628 (2019). We may take notice of plain evidentiary errors "affecting substantial rights although they were not brought to the attention of the court." MRE 103(d).

In *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 372-374; 775 NW2d 618 (2009), this Court observed and ruled:

> On appeal, Gates and Performance Engineering argue that the trial court could not properly consider either the affidavit submitted with the invoices or the invoices themselves because the invoices were not substantiated or otherwise verified by an officer, director, or employee. We agree that the affidavit submitted with the invoices was not properly made on the personal knowledge of the affiant. However, even assuming that the affidavit itself was not substantively admissible, the trial court nevertheless could still consider the invoices.

> In ruling on Barnard Manufacturing's motion for summary disposition, the trial court could only consider substantively admissible evidence. However, although the evidence must be substantively admissible, it does not have to be in admissible form. But it must be admissible in content. . . . Occasional statements in cases that the party opposing summary judgment must present admissible evidence . . . should be understood in this light, as referring to the content or substance, rather than the form, of the submission.

> On appeal, Gates and Performance Engineering do not argue that the invoices are inherently inadmissible; they argue that Barnard Manufacturing failed to lay a proper foundation for their admission. But Barnard Manufacturing did not have to lay the foundation for the admission of the invoices in order for the court to consider them on a motion for summary disposition as long as there was a plausible basis for the admission of the invoices. . . . With a proper foundation, the invoices *would* be admissible as records of regularly conducted activity. Hence, the trial court properly considered the invoices; and the invoices, along with the other submissions noted above, were sufficient to support Barnard Manufacturing's

motion with regard to its claims based on contract and account stated. [Citations and quotation marks omitted; ellipses in first two paragraphs in original.]

"Affidavits, depositions, admissions, and documentary evidence offered in support of or in opposition to a motion based on subrule (C)(1)-(7) or (10) shall only be considered to the extent that the content or substance would be admissible as evidence to establish or deny the grounds stated in the motion." MCR 2.116(G)(6).

Sikkema, in his affidavit, averred that he had reviewed an MME "Surveyor's Report," which was attached to the affidavit. He asserted that the report related to a survey that MME had conducted in the area that retraced the nineteenth-century work of Lyman June. MRE 803(6) provides for the following hearsay exclusion:

A memorandum, report, record, or data compilation, in any form, of acts, transactions, occurrences, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with a rule promulgated by the supreme court or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

The surveyor's report explained why MME rejected a very recent survey of the same area, i.e., the original LCM survey, and the report was written on MME letterhead. Under *Barnard Mfg Co*, 285 Mich App at 372-374, we cannot discern any plain error in considering the surveyor's report. At any rate, we conclude that even if this report were not considered, there was nevertheless ample evidence to sustain the trial court's ruling, e.g., the Gray LCRC, the MME survey prepared for Ottobre, and the corrected LCM survey.

Ottobre also contends that in light of the court's ruling there will be a cascading effect on adjoining parcels because the Fikes admitted below that they would lose acreage under the boundaries they sought, meaning that other parcels will necessarily be affected. Ottobre maintains that the trial court improperly analyzed this issue. But the Fikes stated that they were losing acreage as compared to the original LCM survey determination (or to Sage's description of the boundary).

The ultimate LCM survey determination resulted in an eastern property line for the Fikes's parcel that aligned closely with an existing fence line, and it is consistent with the survey obtained by neighbor Mike Paul. No party presented any evidence that using the historically established lines would impact other adjacent parcels. The trial court did not err by concluding that the "cascade" argument was not a basis for denying the Fikes's motion for summary disposition.

We affirm. Having fully prevailed on appeal, the Fikes may tax costs under MCR 7.219.

/s/ Elizabeth L. Gleicher
/s/ Jane E. Markey
/s/ Michelle M. Rick